**In re TOM CARTER ENTERPRISES, INC., Debtor.**

**In re The CARTER COMPANY, Debtor.**

**In re HUCK'S HOLIDAYS, INC., Debtor.**

**In re TOM CARTER ENTERPRISES LAS VEGAS, INC., Debtor.**

**In re Thomas D. CARTER and Diana M. Carter, Debtors.**

**Bankruptcy Nos. SA 83-05401 RP to SA 83-05404 RP and SA 83-05415 RP.**

United States Bankruptcy Court,
C.D. California.

Dec. 4, 1985.

Curtis B. Danning and James J. Joseph, Danning, Gill, Gould, Joseph & Diamond, Los Angeles, Cal., co-trustees.

Robert W. Alberts, Rutan & Tucker, Costa Mesa, Cal., for creditors' committee.

Theodore B. Stolman, Stutman, Treister & Glatt, Los Angeles, Cal., for co-trustees.

RALPH G. PAGTER, Bankruptcy Judge.

The Second Interim Fee Applications came on for hearing and were submitted to the court on November 26, 1985. The Co-Trustees herein sought an additional fee of $25,815 representing 75% of the maximum allowable fee of the funds on hand. The Co-Trustees, as co-counsel for themselves, sought $58,422.50. Stutman, Treister & Glatt as the other co-counsel for the Co-

Trustees seek $156,845.50, together with $21,222.74 expenses. The attorneys for the creditors' committee sought $19,970 together with $74.60 expenses, and the accountants for the Co-Trustees herein sought $105,442.80 together with $673.33 expenses.

■ The court has reviewed the fee applications and makes several initial general comments. I have previously taken the position that professional persons who charge their clients fees in excess of $80.00 per hour, based upon time spent, cannot, in all honesty and reasonableness, charge their clients for increments in excess of one-tenth of an hour. As I have mentioned, the use of electronic time-keeping equipment for several years before my appointment to the bench, resulted in ascertaining that very few telephone calls last more than one-tenth of an hour, and that it rarely takes more than one-tenth of an hour to read an incoming letter or to write a short outgoing letter. At the hearing, one applicant pointed out to the court, that by reason of billing in quarter hours, if a telephone call takes thirteen minutes, if you bill in quarter hours, you would bill for one-quarter of an hour, and if you bill in tenths of an hour, you would bill for three-tenths of an hour. Thus, if you were charging a client $200.00 per hour, if you billed in quarter hours, you would bill your client only $50.00, but if you billed in tenths of hours you would bill your client $60.00, or an overcharge of $10.00. From this example, the applicant would have me believe that the use of quarter hours is more fair to the client and less likely to lead to overcharging.

However, carrying applicant's analysis a step further, if the telephone call lasted sixteen minutes, a person billing in quarter hours with a $200.00 hourly rate, would bill $100.00 while the person who billed in quarter hours would only bill $60.00, a savings to the client of $40.00 (4 times the overcharge above). It is obvious to me that the larger the minimum-charge base used, the more overbilling will result. This court will adhere to its requirement of time keeping in one-tenth of an hour.[1]

Moreover, in all of the fee applications, no applicant has told the court the exact

---

**1.** This court recently asked the Orange County Bar Association to send a questionnaire to all members of the Commercial Law and Bankruptcy, Business Litigation and Real Estate Sections of the Orange County Bar Association. It is the court's belief that the members of these sections are those practicing in areas of the law most similar to those most frequently encountered in bankruptcy court. The purpose of his questionnaire was to give the court that information so it could meet the requirements of 11 U.S.C. § 330(a)(1) to ascertain the "cost of comparable services other than in a case under this title". The court received 102 responses. With particular reference to the question how minimum time charges were kept, or more specifically, what the billing unit was, 13 of the 102 answers were disregarded either because there was no answer or because the response was unintelligible. Of the 89 answers, 58, or 76% indicated that minimum time charges were kept in units of one-tenth of an hour or less. An additional 8 indicated their minimum time charge was one-sixth or two-tenths of an hour. Eighteen out of the 89, or 20% indicated minimum time charges were kept in quarter hours, and only 4 of the 89, or slightly in excess of 4%, indicated they kept time charges in units greater than tenths of hours. Of the 58 who kept their time charges in tenths or twentieths of hours, 33 or 57%, spend less than 25% of their time in bankruptcy matters. Accordingly, this poll buttresses the court's private opinion that attorneys rendering comparable services outside of the bankruptcy court, keep time records and charge based upon tenths of hours.

While tabulation of the poll has not yet been concluded, the court was intrigued to note that in response to the question as to what hourly rates were charged in the insolvency and non-insolvency matters, 5 attorneys indicated they charged different hourly rates. Of the 5, 2 admitted charging higher hourly rates in insolvency matters (1 spent 80% of his time in bankruptcy and the other 20%), 2 (spent 25% of this time in bankruptcy matters) charged a higher hourly rate in non-insolvency matters, and 1 for 2 years charged a higher non-insolvency rate and for 2 years charged a higher insolvency rate (this attorney spent 40% of his time in bankruptcy matters). A copy of the poll is attached.

To assist the bankruptcy court in Santa Ana in determining what the cost of "comparable services" is under 11 U.S.C. § 330, I provide the following information:

1. I graduated from the _____ Law School in 19___
Summa, Magna or Cum Laude.

fashion in which time records were kept. In private practice, I went from the crude system of having a sheet of paper in the face of each file in which time records were kept based upon the attorney's estimate of the time that had elapsed during the performance of a function, to a more sophisticated peg board system, and finally to an electronic system of keeping time. This electronic system took all the guess work out of time keeping. I must admit wondering on some occasions how counsel, whom I have observed in court, not to be wearing any kind of watch keep their time records. I trust, for all future fee applications, all applicants in this case will be able to inform me of their system for keeping accurate time records. This is regretfully necessary since the court has noted by comparing the time records in various fee applications over the last two years, discrepancies in counsel's recollection of the length of the same phone call vary from one-tenth of an hour to 1.8 hours.

Moreover, I have noticed in reviewing the fee applications at bar, that counsel have frequently "lumped" their time. This term means that rather than breaking out the time spent on each function on a daily basis, counsel has one charge for each day and then indicates all the services rendered during that day. As I have previously said, that method is all right when those services are rendered in one time frame without interruption, but it is preferable when counsel interrupts research to make or receive a phone call, that the time spent on that phone call should be separately stated for the reasons set forth above. In any event, if different functions are performed at different times of the day, they must be stated separately.

Turning now to the individual fee applications, the court hereby rules as follows:

## CO-TRUSTEES' FEE APPLICATION

The court estimates that the Co-Trustees have now rendered 75% of the services

Note 1—Continued

2. I was in the (circle one) upper tenth of my class, upper quarter of my class, upper half of my class, other in scholastic standing.

3. I was admitted to practice in 19___ in California and in 19___ to _____.

4. In the past five years, _____ percent of my time has been spent in bankruptcy time.

5. Of the time spent in bankruptcy matters, the greatest portion thereof has been representing (choose one of the following) debtors, creditors or trustees.

6. I am an associate or partner in a law firm composed of approximately _____ lawyers (lawyers, partners and associates).

7. I have regularly charged the following hourly rates for the last five years.

| YEAR | INSOLVENCY MATTERS | NON-INSOLVENCY MATTERS |
|------|--------------------|-----------------------|
|      |                    |                       |

8. My minimum time charge is _____ hour, and I regularly bill regular clients in _____ hours.

9. My firm regularly does or does not charge all clients for
   a. photocopying at _____ per copy
   b. long distance telephone calls in excess of $_____ /call.

The above information is furnished to Nancy Garoutte, Secretary to Bankruptcy Judge Ralph G. Pagter for the use of the Bankruptcy Judges in determining the value of "comparable services" pursuant to 11 U.S.C. § 330 as well as the use of other Judges and the U.S. Trustee in and for the Central District of California and may be included in Findings of Fact and Conclusions of Law.

which the Co-Trustees will be required to render in connection with their services hereunder. Accordingly, the court will allow the Co-Trustees as interim compensation, 75% of the maximum allowable fees. (This is based on the assumption that the Co-Trustees will be disbursing the funds on hand rather than ever returning any of them to the debtor.) In the Carter case, the Co-Trustees are authorized to pay themselves an additional $19,685; in the Tom Carter Enterprises case an additional $5,225; in the Tom Carter Enterprises Las Vegas an additional $905. The undersigned must note, in connection with this fee application, that there was extreme duplication. By that, I mean that the Co-Trustees' repeated substantial pages and paragraphs contained in the first report verbatim and reproduced time records which had been filed with the court earlier. There is absolutely no reason given for this repetition, and I would appreciate it very much if counsel did not unnecessarily waste my time. However, I do have a question why the time records varied between the reports. For example, the records, filed with the court on January 11, 1985, for the Co-Trustees' time started on December 13, 1983, while those that start on page 63 of the current report started with December 16. What happened to the earlier time records? What other changes are there in the time records? There appears to be 5.4 hours not included on the most recent records. Since applicants have a duty to substantiate that the time they spent on a case was beneficial to the estate, indicating the passage of time spent attending to "misc. matters" may result in the disallowance of that time. The court therefore suggests that counsel keep records which indicate not only the time spent, but what function was performed.

I might further comment that there was an objection based on the fact that the present time spent since the last report by the Co-Trustees only justify payment of an additional $17,100. Time spent is an important indicia for professional persons including trustees, and particularly in a final fee allowance, but not necessarily in an interim fee allowance. The undersigned will point out to the objecting party that the court disallowed approximately 50% of the attorneys' fees requested by the Co-Trustees acting as their own attorneys from the first account for time spent doing trustee's functions. When those hours are added back into the Co-Trustees' time, it is readily apparent that at the conceded fair hourly rate, the Co-Trustees are entitled to the additional compensation.

## CO–TRUSTEES AS THEIR OWN CO–COUNSEL

One of the most difficult areas facing the undersigned is the retention of self as counsel by trustees. I would like to suggest that the better practice is to hire yourself only when you are unable to get competent bankruptcy counsel to represent you. If you elect to hire yourself, you run the risk that the court or any other counsel examining your fee application will accuse counsel of doing trustee's work. In fact, in the case at bar, that is what happened with the objections to the original fee application. That objecting party has indicated that the same event is occurring, but to a lesser extent now. The court concurs. This particular fee application shows a minimum charge of two-tenths of an hour which I find is unreasonable. The fee application further contains substantial "lumping". I further have substantial question in my mind whether there is not a substantial overlapping between the functions performed by each co-counsel for the Co-Trustees. I also noted, for instance, that one of the two Co-Trustees spent all his time preparing the trustee's fee application and charged attorney's fees therefore while the other Co-Trustee spent no time preparing the fee application. This seems to me to be a prime example of counsel for the trustee doing the trustee's job. For the reasons set forth above, I will allow the payment of an additional $20,000 on account of attorneys' fees only to counsel for the co-trustees, namely Danning, Gill, Gould, Joseph & Diamond.

## CO–COUNSEL FOR THE
## CO–TRUSTEES

■ At the hearing on the first interim application I allowed co-counsel for the Co-Trustees 80% of the their requested amount of $40,596.25. The undersigned notes that the $8,121 not allowed is included in the current fee application of $156,845.50. In connection with this particular fee application, I was bothered by the use of minimum charges of quarter of an hour. Accordingly, I will disallow the fee application to the extent of 10% based upon this overcharging. I further was concerned by the double billings for counsel in the same firm while talking to each other. See for instance, September 11, 1984, October 9, 1984. Since I have not previously asked counsel to explain why it was necessary for so many persons in the firm to work on so many of the same things, I will disallow an additional 10% but without prejudice to explanation for each item on which more than one counsel worked or conferred. Therefore, the fee application will be approved for $118,980 75% of which can be paid or the sum of $89,235.

## EXPENSES BY CO–COUNSEL FOR
## THE CO–TRUSTEES

■ On Exhibit B of their fee application, co-counsel has categorized the various items of expenses. The following matters are disallowed with prejudice: Business luncheon; parking; overtime; secretarial; and travel expense. These are items of general overhead which may not be charged to an estate. The following items are approved: Computer research; court costs; process serving; and witness fees. These are all allowable expenses of a bankruptcy estate.

The following items will be disallowed as not being substantiated as to cost or necessity, without prejudice to being clarified on the *next* fee application: Air freight; court messenger; document processing; document reproduction; messenger; photocopying; postage; telecopy charges; and long-distance telephone calls. The court has no substantiation whatsoever for what

is included under air freight. By like measure, no reason has been given why a court messenger or messenger were necessary or used. If by "document processing", applicant is referring to a secretary's time for typing, or making copies, or the like, then it will be disallowed as overhead. On the other hand, if it meant for instance, reproducing briefs, or sending out documents for copying outside the office, and if the applicant would like to provide copies of its bills to show what was reproduced that cost $3,955.47, I would be inclined to grant the same. Until an explanation of what is entailed under "document reproduction" is made, (Is it the same as photocopying?) this will be disallowed. Under the heading of "postage", I would like to know whether that was ordinary mail back and forth between counsel, which is not compensable, or for sending out general notices to creditors, which would be. Finally, I would like a breakdown of the telecopy charges and the telephone long distance charges.

## ACCOUNTANTS APPLICATION

■ The undersigned finds that the hourly rates charged by the accountants and its employees were fair and reasonable. However, the court further finds that the accountants' application is subject to the same deficiencies as the other professionals herein, namely "lumping", excess time by reason of a quarter hour minimum fee, and duplication of services. See for example, March 12, 1984, April 30, 1984 and August 2, 1984. Where a partner gives instructions to a supervisor or a supervisor to staff, only the time of the higher paid employee may be charged. Additionally, I observed a substantial amount of travel time to various storage facilities. It would seem to me that it would have been much more economical to the estate to have had all of the accounting records moved to the offices of the accountants thereby avoiding travel time for highly paid employees. For these reasons, the undersigned feels that the fee application must be discounted by 15% after deducting all "office time" which is included in the gen-

eral overhead. Thus, of the $105,442.80, $777.50 is disallowed with prejudice and the balance of $104,665.30 will be discounted by 15% for the reasons set forth above and approved for $88,965.50. Seventy-five percent of the approved amount, or $66,724.13 will be approved for payment at this time as an interim fee application with the remaining 25% to be retained pending possible duplication of services by the new accountants and further order of the court. From the $66,724 the trustee should deduct the $21,000 heretofore paid, leaving a net amount presently due and payable of $45,-724.13.

Regarding the expenses, "mileage", "parking" and "supplied" [sic] will be disallowed with prejudice and the cost of photocopying, telephone and messenger service are disallowed subject to clarification on final hearing.

### COUNSEL FOR THE CREDITORS' COMMITTEE

This fee application suffers also from "lumping", however since the court has allowed the other fee applications despite "lumping", it will allow this one in full since it appears independently that time is billed in one-tenth hour minimums and increments. The Co-Trustees may pay 75% of the amount claimed as an interim fee.