### In the Matter of NAVIS REALTY, INC., Debtor.

**Bankruptcy No. 186–61974–352.**

United States Bankruptcy Court, E.D. New York.

April 9, 1991.

Sherman, Citron & Karasik, P.C. by Howard Karasik, Sp. Counsel, New York City, for debtor.

Office of U.S. Trustee by Alfred Dimino, Garden City, N.Y.

## DECISION ON FEE APPLICATION

MARVIN A. HOLLAND, Bankruptcy Judge:

Special Counsel for the Debtor submits an application for an interim fee allowance pursuant to § 330 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, a) for an allowance of compensation for services rendered as Special Counsel to the Creditors' Committee and b) for reimbursement of actual and necessary disbursements incurred.

A Bankruptcy Court fee application is no different than any other Bankruptcy Court proceeding whose outcome seeks a binding judgment or order. The judgment or order sought must be supportable by conclusions of law which in turn must be logically sustainable by adequate findings of fact each of which ·in turn is predicated upon evidence sufficient to establish it. In a Bankruptcy Court fee application we start with the application itself as the record, and supplement that record with such testimony or documentary evidence as the applicant may wish to submit. Where, as here, the record contains insufficient factual information to justify or support the necessary findings, and where, as here, the applicant has declined the Court's offer of an opportunity to modify or supplement the application, the application must be denied.

11 U.S.C. § 330 entitled "Compensation of officers" states in subparagraph (a) thereof

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328 and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under sec-

tion 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

In reviewing applications for attorney's fees, the Court must consider three broad areas:

1. Are the services that are the subject of the application properly compensable as legal services?

2. If so, were they necessary and is the performance of necessary tasks adequately documented?

3. If so, how will they be valued? Were the necessary tasks performed within a reasonable amount of time and what is the reasonable value of that time?

*In re Wildman,* 72 B.R. 700, 704–05 (Bankr.N.D.Ill.1987); *In re Shades of Beauty, Inc.,* 56 B.R. 946 (Bankr.E.D.N.Y. 1986), *aff'd,* 95 B.R. 17 (E.D.N.Y.1988).

In order to enable the court to make the findings prerequisite to a proper fee award, a proper professional fee application for compensation pursuant to 11 U.S.C. § 330 should therefore contain, at minimum, the following:

a. A copy of the order authorizing retention of the professional to show compliance with 11 U.S.C. § 327.

b. A statement of all compensation previously received in the case together with a copy of all orders awarding or denying same.

c. A statement of whether or not previous applications for fees have been made in the case, and if made, their history, in order to avoid duplication of compensation for the same services.

d. A statement of the amount presently sought.

e. A schedule of the claimed appropriate billing rate for each individual whose services are the subject of the application, as a starting point for the court to address the "cost of comparable services" under 11 U.S.C. § 330(a)(1).

f. Sufficient information to enable the court to conclude its determination of the appropriate billing rate for each of the persons whose services are the subject of the application. This may include:

i. Biographical data concerning the applicant and its members.

ii. A disclosure of the items which the applicant includes in the calculation of its overhead and operating expenses.

iii. A discussion of the "cost of comparable non-bankruptcy services" 11 U.S.C. § 330, which is "that fee which is customarily charged in the local community by someone who possesses similar skill, experience, expertise, stature and reputation who is faced with similarly novel and complex issues and who procures comparable results." *In re Shades of Beauty,* 56 B.R. at 951.

g. A summary background narrative describing generally those of the debtor's problems addressed by the applicant, and the manner in which they were approached, in order to enable the court to know whether to invoke the provisions of 11 U.S.C. § 328(a).

h. A computation of the compensation sought, derived by totalling the time appropriately spent by each individual involved and then multiplying that amount by the appropriate billing rate for each such individual.

i. If a "lodestar" adjustment is sought, the applicant shall provide the court with a separate analysis of the facts upon which such adjustment is claimed together with the amount of the proposed adjustment.

j. A detailed schedule of disbursements claimed. If not apparent from the context of the application, sufficient information should be provided to enable

the court to pass separately upon the necessity and appropriateness of each item for which reimbursement is sought, in accordance with 11 U.S.C. § 330(a)(2).

k. A copy of the applicant's original time sheets. If kept by hand, they should be accompanied by a typed chronological translation. These time sheets include, at a minimum:

i. Date the service was performed.

ii. Identity of the person performing the service.

iii. A detailed explanation and justification of any items which appear to be unusual.

iv. Description of the service[s] performed. The description should include the subject matter of all conferences and telephone calls, the parties involved and the identity of documents drafted, proofed, filed or served.

The following should be observed with regard to enumerated requirements:

**Itemized Daily Entries.** A proper fee application must list each activity, its date, the attorney who performed the work, a description of the nature and substance of the work performed, and the time spent on the work. Records which give no explanation of the activities performed are not compensable.

**Particular Entries.**

**Negotiations.** Time for negotiations should identify each specific issue.

**Telephone Calls.** An entry of "telephone call" or even "telephone call with Mrs. X" is insufficient. The purpose of the conversation and the person called or calling, must be clearly set out.

**Conferences.** Similarly, an entry of "conference" or "meeting", "conference with X" or "conversation with X" is insufficient. The entry should at the very least note the nature and purpose of the various meetings and conferences as well as the parties involved.

**Drafting Letters or Documents.** Time entries for drafting documents should specify the document involved and the matter to which it pertains. Time entries for drafting letters should briefly set forth the nature of each letter and to whom it is addressed.

**Legal Research.** Entries of "research", "legal research" or "bankruptcy research" are insufficient. The nature and purpose of the legal research should be noted. In addition, the entry should indicate what matter or proceeding for which the research was utilized and why this issue needed to be researched and what use was made of the research in the bankruptcy case.

**Other Entries.** Time entries for other activities, such as court appearances, preparation for court appearances, and depositions should also briefly state the nature and purpose of the activity.

**Lumping.** Applicants may not circumvent the minimum time requirement or any of the requirements of detail by "lumping" a number of activities into a single entry. Each type of service should be listed with the corresponding specific time allotment. Otherwise, the Court is unable to determine whether or not the time spent on a specific task was reasonable. Therefore, services which have been lumped together are not compensable.

**Abbreviations.** If abbreviations are used in the itemized daily entries, they must be explained somewhere in the application. Unexplained abbreviations will render the time entry not compensable.

**Prior Fee Applications.** In addition to the above requirements, the application should state those fees, if any, that were previously approved or denied by the court. Such entry shall include the date of the approval or denial of the prior application or applications and the amount of fees and expenses approved.

While the above requirements help to establish that services performed were "actual," the court must also determine that the services were reasonable and necessary. This determination will be made in accordance with the following guidelines:

The application should contain sufficient detail to enable the court to apply the following generally accepted guidelines:

**Individual Responsibility.** Generally, attorneys should work independently, without the incessant "conferring" that so often forms a major part of many fee petitions. Examples of the kind of work for which only one attorney will be compensable are:

**Conferences.** While some intraoffice conferences may be necessary, no more than one attorney may charge for it unless an explanation of each attorney's participation is given.

**Court Appearances.** When more than one attorney appears in court on a motion or argument for a conference, no fee should be sought for nonparticipating counsel. Attorneys should not circumvent this requirement by merely rotating or taking turns participating at a single court appearance.

**Depositions.** Absent special circumstances, one attorney is sufficient to handle any deposition or § 2004 examination.

**Appropriate Level of Skill.** Senior partner rates will be paid only for work that warrants the attention of a senior partner. A senior partner who spends time doing what a beginning associate could do will be paid at the rate of a beginning associate. Similarly, non-legal work performed by a lawyer which could have been performed by less costly non-legal employees should command a lesser rate (e.g., copying or document delivery).

**Legal Research.** Counsel who are sufficiently experienced to appear before this Court are presumed to have an adequate background in the applicable law. While it is recognized that particular questions requiring research will arise from time to time, fees will be allowed only for general research on law which is not well known to practitioners in the area of law involved.

**Document Review.** Fees are not allowable for simply reading the work product of another lawyer as a matter of interest. Only if such review is required to form some kind of response or to perform a particular task in the case will document review be compensable.

**Routine Services.** Some courts have held that "routine and ministerial servic-es," that is, telephone calls and correspondence, should be compensated at a lower rate than "truly legal services," such as litigation, research and document drafting. In this Court's view, this is an unwarranted distinction which is contrary to the fundamental notion that counsel should be encouraged to resolve matters informally whenever possible in order to avoid costly litigation.

**Fee Petition Preparation.** Attorneys should be compensated for reasonable time necessarily spent in preparing fee applications.

## DISCUSSION

The fee application submitted by Sherman, Citron & Karasik, as Special Counsel for Debtor, is deficient in the following areas:

■ No showing has been made to enable the Court to determine the appropriate hourly billing rate for the professionals for whom compensation is sought. *See, In re Shades of Beauty,* 56 B.R. at 946. A recitation of the applicant's customary billing rate does not establish the criteria of the cost of comparable services as required by 11 U.S.C. § 330(a)(1).

■ Applicant's time sheets do not sufficiently describe in detail the nature and subject matter of the services rendered (research, telephone calls, conferences, meetings) and the time devoted to each task. "[T]he party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Hensley v. Eckerhart,* 461 U.S. 424, 441, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983) (Burger, Chief Justice, concurring). *See, In re Wabash Valley Power Assoc., Inc.,* 69 B.R. 471 (Bankr.S.D.Ind. 1987); *In re Esar Ventures,* 62 B.R. 204 (Bankr.D.Hawaii 1986). The application should explain the outcome of the aforementioned activities and justify their necessity. *See, In re Shades of Beauty,* 56 B.R. at 946. "The time sheets should ideally permit the Court as much as reasonably

possible to identify the legal problems involved, the difficulty of the problems, how the problem was resolved and what results were achieved for the estate." *In re Lafayette Radio Electronics Corp.*, 16 B.R. 360, 361 (Bankr.E.D.N.Y.1982).

For example, the application seeks compensation of $330 for 1.10 hours of services performed, which services are described in the application as "Draft of rules" under the date of 6/29/89. No description of the substance of the work performed is given. The Court is left in the dark as to the reasonableness and necessity of the content of what the attorney seeking compensation actually did during the 1.10 hours claimed. The entry is cryptic and meaningless, and therefore of no value to the Court in evaluating the merits of this fee application.

■ Another disturbing entry follows on 7/5/89: "H.K. RC". For this alleged service $60 is charged for .20 of an hour. No further description of the service is given. "RC" is not a set of initials for one of the attorneys whose services are listed in the application. No guide to abbreviations used is given in the application. As such, this entry is meaningless and not compensable. Further it serves as an example of the abbreviated and cryptic nature of the entire application. Clearly, the application does not meet the burden of showing the reasonableness and necessity of the services alleged to be performed. 11 U.S.C. § 330(a)(1) requires that the services for which compensation is awarded be for necessary services. Therefore, the application should contain a narrative description of each time entry sufficient to enable the court to make a finding of necessity. *In re Bicoastal Corp.*, 121 B.R. 653 (Bankr.M.D. Fla.1990). The applicant has not supplied information adequate or suitable for this purpose.

■ Notations with regard to telephone calls and conferences are defective. An entry of "telephone call" or even "telephone call with Mrs. X" is insufficient. *In re R & B Institutional Sales, Inc.*, 65 B.R. 876, 881 (Bankr.W.D.Pa.1986); *In re Four Star Terminals, Inc.*, 42 B.R. 419, 426

(Bankr.D.Alaska 1984). The purpose and length of the conversations, and the person called or calling, must be clearly set out. *In re NRG Resources, Inc.*, 64 B.R. 643, 653 (W.D.La.1986); *In re D. Diorio & Sons, Inc.*, 46 B.R. 648, 651 (Bankr.N.D.Ill. 1985); *In re Pettibone Corp.*, 74 B.R. 293 (Bankr.N.D.Ill.1987). Similarly, an entry of "conference" or "meeting," "conference with X" or "conversation with X" is insufficient. The entry should at the very least note the nature and purpose of the various meetings and conferences as well as the parties involved. *In re NRG Resources, Inc.*, 64 B.R. at 643; *In re Pettibone Corp.*, 74 B.R. at 293.

The application abounds with insufficiently documented telephone calls and conferences. For example, on 5/2/89 three "telecon" entries exist, two for .20 hours at $60 each, and one for .10 hour at $30 charged. Not described is who was called, the reason for the call, the relevance of the call to the special counsel's retention, or the substance of what, if anything, was discussed. As such, the entry is meaningless to the Court in its attempt to evaluate the necessity and reasonableness of the services rendered. Such bare "telecon" entries permeate the application.

Time entries for drafting documents do not specify the document involved and the matter to which it pertains. *In re Baldwin–United Corp.*, 45 B.R. 381, 382 (Bankr.S.D.Ohio 1984). Time entries for drafting letters fail to briefly set forth the nature and substance of each letter and to whom it was sent. *In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557, 583 n. 29 (Bankr.D.Utah 1985); *In re Pettibone Corp.*, 74 B.R. at 293.

■ The actual times spent on each item have not been separately recorded, but have routinely been "lumped" under one entry. Except as noted below, small amounts of time should not be uniformly reported as a minimum block of time as the applicant has done. *In re Four Star Terminals, Inc.*, 42 B.R. at 426–27 n. 1. For example, the reception of any communication should not be routinely recorded as taking a minimum of one-fifth (0.2) of an

hour. *In re Sapolin Paints, Inc.*, 38 B.R. 807, 814 (Bankr.E.D.N.Y.1984). Also, short telephone conversations should not routinely be recorded as .25 or .2 hours. *In re Four–Star Terminals*, 42 B.R. at 426–27 n. 1. See also *In re Tom Carter Enterprises, Inc.*, 55 B.R. 548–49 (Bankr.C. D.Cal.1985). The telephone company's rates are predicated upon the premise that most telephone calls terminate within three minutes. *Sapolin*, 38 B.R. at 814. If very short telephone calls are routinely recorded as taking 12 or 15 minutes at rates ranging from $110 to $250 per hour and the attorney makes a number of calls, the distortion in the hours claimed and the cost to the estate are substantial. It would not be objectionable to use one-tenth of an hour as the minimum charge for a telephone call or other services, and that minimum is in common use. However, if telephone calls comprise a large portion of the total fee petition, time entries of .1 hour might also be subject to discount. *See, Sapolin*, 38 B.R. at 814; *In re Pettibone*, 74 B.R. at 293.

■ The times for individual items of services have not been separately listed. Applicants may not circumvent the minimum time requirement or any of the requirements of detail by "lumping" a bunch of activities into a single entry. *In re Horn & Hardart Baking Co.*, 30 B.R. 938, 944 (Bankr.E.D.Pa.1983). Each type of service should be listed with the corresponding specific time allotment. *In re NRG Resources, Inc.*, 64 B.R. at 654. This practice makes it impossible for the Court to determine whether or not the time spent on a specific task was reasonable. *In re Affinito & Son, Inc.*, 63 B.R. 495, 498 (Bankr.W.D.Pa.1986); *In re Holthoff*, 55 B.R. 36, 42 (Bankr.E.D.Ark.1985). Therefore, services which have been lumped cannot be compensated. *Horn & Hardart*, 30 B.R. at 944; *In re Pettibone*, 74 B.R. at 293.

■ The application seeks compensation for unidentified and unspecified research. When billing for time spent performing legal research, applicant must identify the particular issue that was researched and should briefly explain why this research was necessary. *See, In re Island Helicopter Corp.*, 53 B.R. 71 (Bankr.E.D.N.Y.1985). "We would remind counsel that a brief description of the work performed is essential for this Court's evaluation of fees. Time records which merely note that a telephone call took place or that a conference was held will be deemed insufficient. At a minimum, time entries for conferences and telephone calls should identify who was spoken to and specify what was discussed. If research was performed, a description of the research should be given. Time entries for drafting documents should specify the document involved." *In re Baldwin–United Corp.*, 45 B.R. at 381–82; *In re Vlachos*, 61 B.R. 473 (Bankr.S.D.Ohio 1986).

■ Professionals seeking compensation must submit a narrative summarizing the nature and purpose of each particular number of hours and compensation sought for each activity. That narrative should also contain a list of each attorney or paralegal that worked on the activity as well as the hours each individual worked on that activity. The narrative should also contain a statement explaining the significance of each activity or project of professional service for which compensation is sought, as well as an explanation of the purpose, necessity, and appropriateness of each such service; a statement of what alternatives were considered by the attorney together with the method of analysis relied upon for choosing the action taken; a statement of any difficult or unusual problems which arose in the case and the manner in which they were addressed. *In re Shades of Beauty, Inc.*, 56 B.R. at 950; *In re Jensen–Farley Pictures, Inc.*, 47 B.R. at 581: Further the narrative for the time records should include a summary of the normal hourly billing rates of each professional and para-professional and the total hours for each. *Id.* at 581.

■ The application makes no attempt to allocate proratable items of overhead and expense. Professionals seeking compensation from the estate must prorate travel time, court time and other similar items among all of their cases which are benefitted by the item for which compensa-

tion is sought. When an attorney makes a court appearance, travel and court waiting time must be apportioned among all of the cases for which that attorney appeared in court on that date. *In re Carter*, 101 B.R. 170 (Bankr.D.S.D.1989).

 The burden of proof as to the entitlement of a fee as well as the reasonableness of the amount sought is upon the applicant. *In re Crutcher Transfer Line, Inc.*, 20 B.R. 705 (Bankr.W.D.Ky.1982); *In re Hamilton Hardware Co.*, 11 B.R. 326 (Bankr.E.D.Mich.1981). It is the applicant's burden to establish the value of his services. *In re U.S. Golf Corp.*, 639 F.2d 1197, 1207 (5th Cir.1981). In order to enable the court properly to evaluate the "cost of comparable services", the applicant must provide the court with sufficient information for it to make an informed, well-reasoned determination. *See, In re Lafayette Radio Electronics Corp.*, 16 B.R. at 360.

 The applicant has not met its burden of proof with regard to the requirements of § 330(a). The extract of its timesheet entries as provided contain repeated and excessive lumping of times such that the court is unable to evaluate the reasonableness and the necessity of the services whose times have been so lumped. Telephone calls and conferences are listed but there has been no detail either as to the participants or the subject thereof. In the rare instance where they have been provided, such as the entry of 04/05/89 "H.K Telecon to Kahn re: accountants", the one or two word reference is insufficient to apprise the court of the nature and substance of the conversation in sufficient detail for the court to evaluate its necessity, or the value thereof. Telephone calls appear to be billed at a minimum of two-tenths of an hour. Items such as the entry for 07/28/89 "H.K Miscellaneous" are wholly insufficient to meet any of the requirements set forth above.

On 09/12/89 there appears an entry "Bankruptcy Court in Brooklyn to deliver papers to Judge Holland" for which 1.80 hours are claimed at $90.00 per hour for a total of $162.00. There are times when papers must not only be filed promptly but should be filed by someone who possesses not only knowledge of bankruptcy law, but of the case as well, such as one of the attorneys of record. An example of this is the filing of the original petition where, in the event that unforeseen problems arise at the time of filing they can be cured by the person who filed such that the filing, and the protections occasioned thereby, can be timely triggered. At other times, and under other circumstances, travel to court for the filing of papers is an unnecessary and unwarranted overutilization of legal talent, the expense for which should not be borne by the estate. Normal routine filing of papers can be done by mail, if necessary by overnight delivery, or by messenger. The burden of establishing the circumstances justifying the travel of one whose billing rate is $90.00 per hour for the delivery of papers must be done in the Application or such services will not be compensated.

Cryptic abbreviations abound, such as 07/21/89 H.K RF re: Katz", "11/03/89 H.K RC", "02/23/90 H.K RC", "05/04/90 H.K RC", and the like, making it impossible for the court to determine the extent to which the criteria established by 11 U.S.C. § 330 may have been met by the applicant.

Similarly, the disbursements listed by the applicant in Exhibit F to its application are totally devoid of sufficient detail to enable the court to evaluate them. Items are listed such as "Expenses–Travel" or "Expenses"—name of party; other expenses are listed merely "Travel" or "Xeroxing" without any indication as to the necessity, appropriateness or reasonableness of the disbursement claimed.

At the hearing held on the Application, the foregoing deficiencies were pointed out by the court to the applicant. The court offered the applicant a reasonable time to update, supplement or modify its application and the applicant declined the court's offer. As a result, the fee application does not provide the court with the required information and data necessary in order to approve it.

Accordingly, the application is denied.