**In the Matter of HUNT'S HEALTH CARE, INC., Debtor.**

**Bankruptcy No. 88–10311.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Sept. 28, 1993.

---

Douglas Adelsperger, Fort Wayne, IN, for Trustee.

Daniel Serban, Fort Wayne, IN, for Lincoln Bank.

Grant F. Shipley, Fort Wayne, IN, for M–K Management.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court on the application for attorney fees filed by counsel for the trustee in this case, Beckman, Lawson, Snyder, Sandler & Federoff. M–K Management and Lincoln Bank, creditors, object to the requested amounts. They object both to specific fees charged by the trustee's counsel and generally that the fees requested are excessive for the results obtained.

Pursuant to § 330 of the United States Bankruptcy Code, the professionals who assist in the administration of the estate are entitled to

(1) reasonable compensation for actual, necessary services rendered ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses. 11 U.S.C. § 330(a).

The purpose of § 330 is two-fold. First, compensation should be fair and reasonable. Second, in order not to deter competent counsel from entering the bankruptcy area, attorneys should receive in bankruptcy matters what they would receive on the open market. *Matter of UNR Industries, Inc.,* 986 F.2d 207, 209 (7th Cir.1993).[1]

---

1. In enacting this and other provisions relating to professional compensation, Congress rejected the "economy of administration" approach which shaped compensation for professionals under the Bankruptcy Act. 124 Cong.Rec. H11,091–92 (daily ed. Sept. 28, 1978) *reprinted in* 1978 U.S.C.C.A.N. 6436, 6442; 124 Cong.Rec. S17, 408 (daily ed. Oct. 6, 1978) *reprinted in* 1978 U.S.C.C.A.N. 6505, 6511 (remarks of Rep. Edward and Sen. DeConcini). *See also UNR Industries,* 986 F.2d at 208; *In re Nucorp Energy, Inc.,* 764 F.2d 655, 658 (9th Cir.1985). Under the "economy of administration" principle courts set fees for attorneys based on equity and fairness to creditors and on conservation of the estate, not on what the attorney would have received in the market. As a result, a perceived stigma arose that only less qualified counsel in the bankruptcy bar worked for debtors due to the reduced compensation. *See generally In re Drexel Burnham Lambert Group, Inc.,* 133 B.R. 13, 17–19 (Bankr.S.D.N.Y.1991). Congress intended to rectify this problem by allowing "[p]rofessionals in bankruptcy cases ... to be paid on a comparable basis to other privately retained counsel, both in terms of timeliness and amount

To determine the "reasonable compensation," a court determines the reasonable hourly rate and the hours reasonably spent. The court then multiplies the two to determine the "lodestar".[2] *City of Burlington v. Dague*, — U.S. —, —, 112 S.Ct. 2638, 2640, 120 L.Ed.2d 449 (1992); *Blum v. Stenson*, 465 U.S. 886, 898–900, 104 S.Ct. 1541, 1548–1550, 79 L.Ed.2d 891 (1984). *See also In re Boddy*, 950 F.2d 334, 337 (6th Cir.1991). The Seventh Circuit has decided that the reasonable hourly rate is presumptively the lawyer's hourly rate on the open market. *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir.1993). The court may exclude hours that were not reasonably spent or are insufficiently documented from the application. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983). Once the reasonable hourly rate and the number of reasonable hours have been established and the resulting lodestar calculated, the Supreme Court has "established a 'strong presumption' that the lodestar represents the 'reasonable' fee." *City of Burlington*, — U.S. at —, 112 S.Ct. at 2641. The lodestar can then be adjusted upwards or downwards upon consideration of other factors. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940; *Estate of Borst v. O'Brien*, 979 F.2d 511, 515–16 (7th Cir.1992). Upward modifications should, however, be rare. *Blum*, 465 U.S. at 899–901, 104 S.Ct. at 1548–550. *See also Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986), *rev'd on other grounds*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987).

In determining the lodestar, the fee applicant has the burden of properly documenting the hours and hourly rates involved and producing evidence of both. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. The burden of going forward then shifts to an opposing party if it wishes to dispute the lodestar. It must submit evidence challenging the accuracy or reasonableness of any item in the application. *Blum*, 465 U.S. at 892 n. 5, 104 S.Ct. at 1545 n. 5. If the court reduces the hours spent or the lodestar figure it must articulate the reasons for these adjustments. *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. *See generally Estate of Borst*, 979 F.2d at 515–16.

Notwithstanding the presumption which flows from the lodestar procedure outlined above, bankruptcy courts have vigorously interjected themselves into the consideration of fee applications. An explanation for this activism lies primarily in the perceived noninterest of other parties in examining fee applications closely. *In re Rheam of Indiana, Inc.*, 133 B.R. 325, 332 (D.E.D.Pa.1991). Often, it seems, it may not be cost effective for a creditor to justify attacking the fees of another party when the dividend to each individual creditor will not be appreciably effected. In order to promote "fairness" and discourage "price gouging" a court, under the guise of exercising its independent duty with regard to the application, may take it upon itself to cut, sometimes drastically, the requested fees.

In the Seventh Circuit, the bankruptcy courts have been guided in their review of fee applications by the standards enunciated by the District Court in *In re Continental Illinois Securities Litigation*, 572 F.Supp. 931 (N.D.Ill.1983).[3] Early on in that case,

---

of payment." *In re Commercial Consortium of California*, 135 B.R. 120, 123 (Bankr.C.D.Cal. 1991) (citations omitted). The rates that attorneys were allowed to charge for legal services were to be established by the market, not the bankruptcy judge's sense of fairness. *Drexel Burnham*, 133 B.R. at 19.

**2.** While some courts believe other approaches beside the lodestar are available, *see e.g. In re East Peoria Hotel Corp.*, 145 B.R. 956, 962–63 (Bankr.C.D.Ill.1991); *In re Farah*, 141 B.R. 920, 923–24 (Bankr.W.D.Tex.1992), the better view is that the lodestar subsumes all other tests. *In re Apex Oil Co.*, 960 F.2d 728, 731–32 (8th Cir.

1992); *In re Great Sweats of Virginia, Inc.*, 109 B.R. 696, 697 (D.E.D.Va.1989). *See also UNR Industries*, 986 F.2d at 209 (implicitly assumes bankruptcy fee applications are to be determined according to lodestar).

**3.** The full history of the litigation is as follows: *In re Continental Illinois Securities Litigation*, 572 F.Supp. 928 (N.D.Ill.1983); 572 F.Supp. 931 (N.D.Ill.1983); 732 F.2d 1302 (7th Cir.1984); 603 F.Supp. 773 (N.D.Ill.1985); 750 F.Supp. 868 (N.D.Ill.1990), *rev'd and remanded* 962 F.2d 566 (7th Cir.1992), *appeal after remand*, 985 F.2d 867 (7th Cir.1993), *on remand*, 813 F.Supp. 633 (N.D.Ill.1993); 148 F.R.D. 594 (N.D.Ill.1993).

the District Court issued an order detailing the standards it anticipated using when reviewing the fee applications that would come before it.[4] *Continental Illinois*, 572 F.Supp. 931. These standards included requirements that conferral time within a firm was not to be charged; attorneys' hourly rates would be chosen by the type of work done and the level of expertise it demanded, not by the rate of the attorney who performed the work; only a minimum of compensation for legal research would be allowed; review of other attorneys' work was not compensable; time records would be detailed and itemized by activity; and so on. These standards were quickly adopted by bankruptcy courts which saw them as appropriate guidelines in their own review of fee applications. *In re Rusty Jones, Inc.*, 134 B.R. 321, 333 (Bankr.N.D.Ill. 1991); *In re Chicago Lutheran Hospital Ass'n.*, 89 B.R. 719, 725 (Bankr.N.D.Ill.1988); *In re Prairie Central Railway Co.*, 87 B.R. 952, 956 (Bankr.N.D.Ill.1988); *In re Pettibone Corp.*, 74 B.R. 293, 297 (Bankr.N.D.Ill. 1987); *In re Wildman*, 72 B.R. 700, 706 (Bankr.N.D.Ill.1987); *In re Wittman Eng'g & Mfg. Co.*, 66 B.R. 488, 490 (Bankr.N.D.Ill. 1986). This court has, in turn, followed these cases in judging fee applications itself.

In *Matter of Continental Illinois Securities Litigation*, 962 F.2d 566 (7th Cir.1992), the Seventh Circuit reviewed the district court's sua sponte application of these standards to the attorney's fee application. The court identified three errors in how the district court reviewed and reduced the requested fees. First, the district court erred in bypassing the market rate for the services rendered. Second, the district court should not have cut the requested fees across the board; instead it should have only cut specific items. Third, the expense of paralegal time and computer research was to be charged at market rate—whatever the firm

charged other clients—not at the firm's actual cost for the time or as part of overhead.

The circuit court criticized the district court for attempting to second guess the market. Although, the district court had reduced the fees to what it believed was their fair value, the Seventh Circuit held that it was not up to the trial judge to determine the market value of a service. The court stated:

> it is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order. *Continental Illinois*, 962 F.2d at 568.

Since there was no evidence that the hourly rates requested by the applicant were not market rates, it was improper for the District Court to reduce them.

The circuit court also criticized the district court for cutting the fees for research and conferral across the board, instead of disallowing specific items of unreasonable, noncompensable activity. They stated:

> A judge is not permitted to destroy substantial entitlements to attorneys' fees on the basis of his inarticulable and unsubstantiated dissatisfaction with the lawyers' efforts to economize on their time and expenses. *Continental Illinois*, 962 F.2d at 570.

In later proceedings the Seventh Circuit reemphasized the need to rely on market factors to determine the appropriate fee award. The circuit court mandated that the district court rely on evidence of what the market would allow for comparable services rather than utilize a time sampling approach. *Matter of Continental Illinois Securities Litigation*, 985 F.2d 867 (7th Cir.1993).

The Seventh Circuit also criticized the district court for not allowing the firm to charge

---

4. The district court's basis for awarding fees to counsel in *Continental Illinois* was the "common fund" theory. *Continental Illinois*, 750 F.Supp. at 876, *rev'd* 962 F.2d 566 (7th Cir.1992). Where litigation results in the creation or preservation of a fund to be distributed to plaintiffs in a class action the court has the equitable power to award fees out of the fund to the attorneys for the litigating class. *Boeing Co. v. Van Gemert*,

444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). Attributes include the existence of a fund under the court's control and a customary lack of third-party interest in fees requested by class attorneys; these are all attributes similar to those found in bankruptcy fee matters. *In re Paolino*, 71 B.R. 576, 584 (Bankr. E.D.Pa.1987).

its customary rates for paralegal time and computer research expenses. Billing paralegals at their market rates has been approved by the Supreme Court, *Missouri v. Jenkins,* 491 U.S. 274, 286–89, 109 S.Ct. 2463, 2470–72, 105 L.Ed.2d 229 (1989), primarily as an incentive to attorneys to use less expensive help where possible. Similarly, the Seventh Circuit believed charges for computer research should also be billed in order to encourage its use.

> [T]he more important point[, however,] is that the market—the paying, arms' length market—reimburses lawyers' LEXIS and WESTLAW expenses, just as it reimburses their paralegal expenses, rather than requiring that these items be folded into overhead. Markets know market values better than judges do. *Continental Illinois,* 962 F.2d at 570.

The Seventh Circuit acknowledges that one of the goals in allowing payment for these services is to discourage lawyers from substituting their own more expensive time when a paralegal or computer research could do the same task more economically. The emphasis on allowing the market to determine value, however, extends to other expenses as well. The fee applicant is entitled to what the market would pay for them. Expenses need not be considered overhead or billed at their actual cost unless this is also done for other paying customers. *Contra In re Lifschultz Fast Freight, Inc.,* 140 B.R. 482, 489 (Bankr.N.D.Ill.1992); *In re CF & I Fabricators of Utah, Inc.,* 131 B.R. 474, 494 (Bankr.D.Utah 1991).

The Seventh Circuit's reasoning and rationale in *Continental Illinois* mandate a pause for this court to reconsider the fee application process in bankruptcy. While the policy and goals in bankruptcy fee cases are to some extent different from those in the common fund case considered by the *Continental Illinois* Court, the underlying rationale of fair payment to attorneys for what they would have received in the market applies with equal force. Just as the judge's function in common fund cases

> is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court

order [,] *Continental Illinois,* 962 F.2d at 568,

so to does

> [11 U.S.C. § ] 330 ... require[ ] lawyers in bankruptcy matters to receive the same compensation as they would earn in performing similar services outside the context of bankruptcy. *UNR Industries,* 986 F.2d at 210. *See also In re Farley, Inc.,* 156 B.R. 203 (Bankr.N.D.Ill.1993).

Since *Continental Illinois,* the Seventh Circuit has continued to emphasize the role of the market in approving attorney fees. In *Gusman v. Unisys Corp.,* 986 F.2d 1146 (7th Cir.1993), a fee-shifting case, the court stressed that attorneys are entitled to charge their customary billing rate, not merely the market rate for comparable services in the area in which they worked. "[L]awyers who fetch above-average rates are *presumptively* entitled to them, rather than to some rate devised by the court." *Gusman,* 986 F.2d at 1150 (emphasis added). *See also Barrow v. Falck,* 977 F.2d 1100, 1105 (7th Cir.1992) (plaintiff's lawyer whose regular market rate was between $90.00–$110.00/hour was not entitled to $135/hour rate in fee-shifting case). Similarly, in *Pressley v. Haeger,* 977 F.2d 295 (7th Cir.1992), the court stated "[f]ee litigation under § 1988 depends on what the market rate is rather than what litigants and judges think it ought to be." *Id.* at 299.

The Supreme Court has also emphasized market factors in determining reasonable attorney fees under fee-shifting statutes. The fee is to be "calculated on the basis of rates and practices prevailing in the relevant market...." *Missouri v. Jenkins,* 491 U.S. 274, 286, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989). The Court has "repeatedly stressed that attorney's fees awarded under [§ 1988] are to be based on market rates for the services rendered." *Id.* at 283, 109 S.Ct. at 2469 (citations omitted). Under § 1988, compensation for paralegals, law clerks and recent law school graduates was also to be awarded at market rates as part of a "reasonable attorney's fee." *Id.* at 288, 109 S.Ct. at 2471 (1989).

Notwithstanding its emphasis on the market as being the appropriate mechanism to

establish attorney fees, the Seventh Circuit would not ignore the trial court's independent duty to examine fee applications. It would agree that "judges are not rubber stamps of lawyers' demands, even when those demands are unopposed." *In re M.E.S., Inc.*, 148 B.R. 1, 2 (D.D.P.R.1992). *See also In re Scoggins*, 142 B.R. 940, 943 (Bankr.D.Or.1992). Indeed, the court has expressed approval of a number of different ways for a court to examine fee applications in a common fund class action suit to ensure that they are not inflated. *Continental Illinois*, 962 F.2d at 572–73.

The court's independent duty to examine the fee applications that come before it must not be underestimated or taken lightly. Furthermore, as with the court's independent duty in other areas of the bankruptcy process, the "responsibility is not excused by creditor inactivity." *In re Stuart Glass & Mirror, Inc.*, 71 B.R. 332, 335 (Bankr. S.D.Fla.1987). Neither is it an obligation which can "be fulfilled through a cursory or perfunctory review...." *Matter of Dues*, 98 B.R. 434, 441 (Bankr.N.D.Ind.1989). The present challenge, therefore, is to reconcile the court's independent duty in the fee process with the restrictions placed upon its review of fee applications by the Seventh Circuit's market based approach and the presumptively reasonable fee that results from the lodestar calculation.

■ In order to better understand the proper nature of the court's independent duty in reviewing fee applications, it is illustrative to consider the nature of the court's independent duty in other more traditional aspects of litigation. Once such area involves a plaintiff's request for a default judgment. When a defendant fails to respond to a complaint against it, the plaintiff is entitled to the entry of default. A default is not, however, "an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Nishimatsu Constr. Co. Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975). Instead, the failure to respond operates only as an admission of the well-pleaded factual allegations contained in the complaint. *Id.* Those allegations must still provide a legitimate basis for the entry of judgment. Consequently, even after default, a defendant is still entitled to challenge the legal sufficiency of the complaint and whether its allegations state a claim upon which judgment may be entered. *Id.* at 1206–07. *See also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978). If the well-pleaded allegations, which are deemed to have been admitted by the defaulting defendant, do not support the entry of judgment, judgment cannot be entered. Thus, while the factual allegations in the complaint may be taken as true, in passing upon a request for a default judgment the court, nonetheless, has an independent obligation to examine those facts and to satisfy itself that the proper legal standards for the entry of judgment are met. *Weft, Inc. v. G.C. Inv. Assocs.*, 630 F.Supp. 1138, 1141 (E.D.N.C.1986), *aff'd subnom Weft, Inc. v. Georgaide*, 822 F.2d 56 (4th Cir.1987) (Text in Westlaw); *In re Wall*, 127 B.R. 353, 355 (Bankr.E.D.Va. 1991).

■ The court's role in the summary judgment process is a similar one.

[T]he party moving for summary judgment has the burden to show that he is entitled to judgment under established principles; and if he does not discharge that burden then he is not entitled to judgment. No defense to an insufficient showing is required. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161, 90 S.Ct. 1598, 1610 [26 L.Ed.2d 142] (1970) (quoting 6 *J. Moore, Federal Practice* ¶ 56.22[2] at 2824–825 (2nd ed.1966)).

Thus, an unopposed motion cannot automatically be granted. Instead, the court is required to go beyond the lack of opposition and "must make the further finding that given the undisputed facts, summary judgment is proper as a matter of law." *Wienco, Inc. v. Katahn Assocs., Inc.*, 965 F.2d 565, 568 (7th Cir.1992).

This review of the court's role and obligation in more traditional aspects of litigation reveals that there is a distinction between matters of fact, which will be unique to each individual action, and matters of substance, which require the application of legal principles to the facts before the court. The court's duty is primarily concerned with the

latter and not the former aspect of the process. The court should work with the facts and evidence placed before it and, even where those facts are unchallenged, determine whether the information placed before it warrants the relief requested when measured by the appropriate legal standard. The existence of an independent duty

> does not ... require the court to doff its robes and assume the role of an advocate or become a grand inquisitor.... Instead, the court is to act as a guardian to see that the requirements of the law have been fulfilled. *Matter of Dues*, 98 B.R. 434, 441 (Bankr.N.D.Ind.1989).

▮▮▮▮ There is little reason that the nature of the court's independent duty should fundamentally change simply because the request before it involves an application for attorney fees rather than some other type of relief. As in other matters, the outcome will turn on the application of the governing legal principles to the facts put before the court. If those facts are in dispute, the court will, of necessity, need to resolve the contested issues before the governing law can be applied. If the facts are uncontested, all that remains is for the court to determine whether those facts, when measured by the applicable legal standards, are sufficient to carry the burden of proof imposed upon the moving party to justify the award sought. Except as to facts which may be judicially noticed, the court should not make factual determinations based on anything other than the evidence placed before it.[5]

▮▮▮▮ The burden of proof in proceedings concerning attorney fees rests with the applicant. It has the responsibility for submitting an application from which the amount of its fees can be determined with reasonable dispatch and the failure to do so may warrant denial of the application. *Matter of Central Ice Cream Co.*, 836 F.2d 1068, 1074 (7th Cir.1987). To be proper, the application and its supporting documentation should be complete and self contained and include all of the relevant information the applicant would initially like the court to consider concerning the nature and the value of the services it provided. This requires the applicant to separately itemize and describe any expenses, the services for which compensation has been sought and the amount of time devoted to them; it must also identify each attorney or paraprofessional involved and their applicable hourly rates. Depending upon the size and complexity of the application and the range of services covered by it, this may require the applicant to separately categorize the time involved in order to ensure that the application does not become an incomprehensible mass of undifferentiated chronological data.[6] It is not enough, however, to simply identify in detail what it is that was done; the court should also be apprised of the results obtained. In other words, what was actually accomplished with all this time and effort. If the applicant has reduced or eliminated time otherwise devoted to the matter or adjusted hourly rates in order to compensate for excessive or unproductive activity or less than satisfactory results, the court should apprised of this fact.

▮▮▮▮ In the ultimate analysis, an applicant seeking payment of its fees from a bankruptcy estate or out of the assets of a bankruptcy estate is expected to provide the court and creditors with the same type of descriptive detail and to exercise the same degree of billing judgment that it would give to its most valued client. Provided that it does so, the fee produced by the resulting lodestar calculation will, presumptively, be a reasonable one. Absent evidence to the contrary, the presumption of reasonableness should be respected and the fee generated by the lodestar calculation should be the fee awarded.

---

**5.** Of course, if the court has doubts or concerns about the sufficiency of a particular application, it retains the discretion to require more detailed proof or to hold an evidentiary hearing. In appropriate cases, the court might want to consider the appointment of an expert to offer an opinion on the application. *See* Fed.R.Evid. Rule 706.

**6.** The applicant in this case has divided its fee application into three matters. Matter 1 concerns its general duties in representing the Chapter 7 Trustee. Matter 2 concerns its work in selling the facility of the debtor. Matter 3 concerns the applicant's services in an appeal of the conversion of the case.

The court is by no means aloof or removed from the fee process. It must ultimately decide whether the lodestar amount has been accurately determined and whether the fee requested is truly a reasonable one. This determination, however, must be made based upon the facts properly placed before it, the conclusions it is able to draw from those facts and the application of the governing law to them. Thus, even where the application is uncontested, the court has the responsibility to review it in order to satisfy itself that it contains all of the information and the detail necessary to give rise to the presumption of reasonableness which makes out the applicant's prima facie case in support of the requested award. It must also determine whether or not any of the services for which compensation has been sought encompass things which, as a matter of law, cannot properly be compensated. *See e.g.* 11 U.S.C. § 328(b); *In re J.W. Knapp Co.*, 930 F.2d 386 (4th Cir.1991); *Matter of Shades of Beauty, Inc.*, 95 B.R. 17, 18 (D.E.D.N.Y. 1988); *In re Kitchen Lady, Inc.*, 144 B.R. 544, 547–48 (Bankr.M.D.Fla.1992); *In re Harris*, 143 B.R. 957, 960 (Bankr.M.D.Fla. 1992); *In re Butterbaugh*, 135 B.R. 507, 509–10 (Bankr.N.D.Ohio 1991). In appropriate cases the court also has the ability to satisfy itself that the applicant has properly exercised its billing judgment. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–40. *See e.g. Matter of Central Ice Cream Co.*, 841 F.2d 732 (7th Cir.1988); *In re Great Sweats*, 113 B.R. 240, 242–44; *In re Metro Transp. Co.*, 107 B.R. 50, 52–53 (D.E.D.Pa.1989).

What the court should not do, however, not without evidence to the contrary, is to change the facts initially presented to it in an otherwise complete fee application. This includes the facts concerning how the market compensates the services in question. Thus, the court should not, on its own, second guess counsel in deciding whether this conference or that phone call were necessary, whose participation was appropriate, what the market generally pays for the time and services of counsel and its staff or how it reimburses certain expenses.

It is with regard to the facts contained in the application that those who have the opportunity and the duty, *see* 28 U.S.C. § 586(a)(3)(A), to object to the fees sought play a critical role. If the facts bearing on the court's decision should be something other than what has been set forth in a proper fee application, it is they who must bring those facts to the court's attention. Thus, if certain services are not generally compensated as requested, if counsel's hourly rate or billing practices are not consistent with the appropriate market, or if the market would place a different value on those services from that produced by the lodestar calculation, an objection should be filed and, if necessary, evidence presented. Of course objectors are not limited to questioning the facts set forth in the application. They may also challenge the legal sufficiency of the application itself, in terms of whether it contains the information and detail needed to allow them to intelligently review it or to establish the applicant's prima facie case of proving what a reasonable fee would be.

The result of this approach is to recognize and give effect to the distinctly different roles played in the fee process by the applicant, the court and any objector. It does not change the requirements associated with a proper fee application or the legal standards which are to be applied. What it does do, however, is recognize that different responsibilities with regard to the law and the facts involved in any fee application are allocated between the various players. The applicant bears the burden of proving its entitlement to fees by initially presenting sufficiently detailed information or evidence concerning its services to give rise to the presumption of reasonableness attached to the lodestar calculation. Objectors have the responsibility to challenge this information and to produce evidence controverting that produced by the applicant. The court's role in the process should be limited to making findings of fact based on the evidence and information properly presented to it, measuring those facts by the applicable legal standard, and determining the reasonable fee that results from the application of the law to the facts. Only in rare and extreme cases should the court step beyond its defined role as an arbiter of disputed facts.

Without being presented with facts beyond those contained in an otherwise sufficient fee application, the court should not reduce an attorney's hourly rate or decide what is or is not to be characterized as overhead or how certain expenses are properly billed. Neither should the court take the approach that, just because it frequently reviews a multitude of fee applications, it is somehow in a better position to determine the reasonableness of a requested fee than the market. An attorney's customary billing practices are presumptively correct. *Gusman,* 986 F.2d at 1150. While they may not be dispositive, departing from them requires a reason and information which would warrant the conclusion that the presumption accorded to counsel's regular practice should not be followed. *Id.* at 1151. Thus, the burden is on the objector to "establish a good reason why a lower rate is essential to assess a 'reasonable attorney's fee'." *Id. See also Pressley,* 977 F.2d at 299 (where objector did not contest affidavits concerning fee applicant's market rate, court will use that rate); *HealthChicago, Inc. v. Ass'n for Organizational and Human Dev. Mgt. Co.,* No. 91 C 6690, 1992 WL 317205, 1992 U.S. Dist. LEXIS 16468 (N.D.Ill. Oct. 28, 1992) (fee applicant's asserted market rate will be used in calculating lodestar where no other evidence concerning market rate was introduced).

A party objecting to a fee application may not do so based on the general proposition that the fee sought is simply too much. It should go beyond this assertion to articulate a reason why and, if necessary, present evidence in support thereof. Just as the district court in *Continental Illinois* could not properly reduce fees for "inarticulable and unsubstantiated dissatisfaction with the lawyers' efforts to economize", *Continental Illinois,* 962 F.2d at 570, this court should not heed a creditor's unexplained dissatisfaction. "[A] gestalt reaction that there was too much [time spent] ... isn't good enough." *Id.* The objector must, at some point, identify any allegedly improper, insufficient, or excessive entries and direct the court's attention to them. The objector should also be able to identify a reason why the hourly rates involved and the time charged are not reasonable or why the market would place a lower value on counsel's labors and offer evidence supporting its position.

It remains to apply this procedure to the matter before the court. Lincoln Bank objects to the fee application on four grounds.

1) It was unreasonable for the applicants to raise their hourly rates during the case.

2) The time spent supervising the mailing of notices should not be charged.

3) Time spent conferring between attorneys within the same firm should not be charged.

4) The total amount is unreasonable considering the result obtained.

M–K Management's objection joins in the fourth ground, that the total amount is simply excessive for the results obtained.[7]

The parties have stipulated that the applicant raised its hourly rates during the case at the same time it raised them for its other clients. There is no evidence that the rates counsel charged, either before or after the change, are not reasonable ones or that it was not appropriate for counsel to increase its hourly rates. The parties have also stipulated that the time such as that challenged

---

7. M–K also argues that the court should disregard *Continental Illinois* and apply the same standards to the present application that it applied to M–K's earlier application for fees. This argument, based upon "the law of the case" is misplaced.

The law of the case doctrine provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case. *Redfield v. Continental Casualty Corp.,* 818 F.2d 596, 605 (7th Cir.1987).

The doctrine normally applies when the same parties to a prior proceeding are involved at a subsequent stage of the same litigation. The doctrine does not apply where, as here, the court is faced with a similar dispute involving different parties. *See U.S. v. Guy,* 903 F.2d 1240, 1242 (9th Cir.1990). Furthermore, neither *Continental Illinois* nor this decision change the legal standards applicable to fee applications as opposed to clarifying the proper allocation of responsibility between the court and the parties with regard to the law and the facts to be applied.

by Lincoln Bank's second and third objections is routinely charged to and paid by applicant's other clients. There is no evidence of market practices to the contrary.[8] Given the evidence presented to the court, these objections should be overruled.

■ The general objection by both M–K Management and Lincoln Bank, that the total amount sought is unreasonable for the results obtained, also fails. The objectors have not articulated any reason why this is so. Just as the court should not justify a fee for an applicant, it should not have to fashion an objection for a complaining party. A creditor must articulate a plausible argument why the requested fee is too high and, if necessary, be able to offer proof that the same result could have been obtained less expensively on the market. These creditors did not do so.

■ On its face counsel's application initially appears to be proper. The application is supported with appropriate documentation and all of the time and expenses for which compensation has been sought are satisfactorily itemized and described. The court's review of that itemization, however, reveals that counsel has sought compensation for some services which are clearly obligations or duties that must be performed by the trustee, *see* 11 U.S.C. § 704, and which should not be compensated as attorney fees. *See* 11 U.S.C. § 328(b). The mandate of § 328(b) is clear and should be respected where counsel performs services which are quintessentially trustee duties, even though counsel may not be serving in a dual capacity. *See Shades of Beauty*, 95 B.R. at 18. In general terms, these noncompensable services relate to the time spent supervising or monitoring the estate's bank accounts, the employment of professionals and the preparation of the trustee's various reports. The total value of the time in matter # 2 associated with these noncompensable activities is $640.25.[9] As to matter # 1, the value of this time is $996.50.[10] There is no such problem with matter # 3.

Once the noncompensable time is excluded, the application provides the court with all of the information needed to determine the lodestar calculation. Counsel has, therefore, carried its burden of making a prima facia case for the remaining fees it seeks and, in

---

8. Whether or not time spent supervising the mailing of notices is compensable is a closer question than the time spent conferring between attorneys. A limited amount of time spent by a professional in supervising mailing is compensable, where, as here, the evidence before the court indicates that the market also pays compensation for these services. *See Matter of Caribou Partnership III*, 152 B.R. 733, 739 (Bankr.N.D.Ind. 1993); *In re Associated Grocers of Colorado, Inc.*, 137 B.R. 413, 435 (Bankr.D.Colo.1990); *In re Ginji Corp.*, 117 B.R. 983, 994 (Bankr.D.Nev. 1990).

9. These entries are:

| Date | Hours | Value |
|------|-------|-------|
| 8/6/90 | 2.00 | $160.00 |
| 8/8/90 | .15 | 20.25 |
| 8/20/90 | .50 | 40.00 |
| 3/30/91 | 1.75 | 262.50 |
| 5/7/91 | .25 | 37.50 |
| 5/29/91 | .25 | 37.50 |
| 6/7/91 | .25 | 37.50 |
| 6/21/91 | .30 | 45.00 |
| | | $640.25 |

10. These entries are:

| Date | Hours | Value |
|------|-------|-------|
| 8/8/90 | .20 | $ 27.00 |
| 8/8/90 | .25 | 33.75 |
| 8/21/90 | .25 | 33.75 |
| 9/10/90 | .20 | 27.00 |
| 9/24/90 | .75 | 101.25 |
| 9/24/90 | .75 | 101.25 |
| 10/3/90 | .65 | 87.75 |
| 10/8/90 | .20 | 27.00 |
| 11/7/90 | .20 | 27.00 |
| 12/12/90 | .30 | 40.50 |
| 12/26/90 | .40 | 54.00 |
| 1/7/91 | .20 | 30.00 |
| 2/8/91 | .20 | 30.00 |
| 3/8/91 | .20 | 30.00 |
| 3/14/91 | .35 | 52.50 |
| 3/15/91 | .35 | 52.50 |
| 3/31/91 | .50 | 75.00 |
| 4/24/91 | .25 | 37.50 |
| 5/7/91 | .25 | 37.50 |
| 5/28/91 | .25 | 16.25 |
| 6/7/91 | .25 | 37.50 |
| 6/27/91 | .25 | 37.50 |
| | | $996.50 |

the absence of evidence to the contrary, is entitled to the presumption of reasonableness which attaches to that calculation. Since there is no evidence to the contrary, counsel is entitled to an award of attorney fees and expenses it seeks for its compensable services, as requested. Counsel is therefore entitled to fees and expenses on account of matters number 1 and 3 totaling $14,939.97, as an administrative expense. Counsel is also entitled to fees and expenses on account of matter # 2, in the sum of $19,657.86.[11] An appropriate order will be entered.

---

11. The parties do not dispute that this amount is, pursuant to § 506(c), properly chargeable to Lincoln Bank.