**In re Tina Renee WILLIAMS, Debtor.**

**Tina Renee Williams, Plaintiff**

**v.**

**Donald L. Williams, J. Bryan Nugen, Defendants.**

**Bankruptcy No. 02–14305.
Adversary No. 04–1328.**

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

March 30, 2007.

Grant F. Shipley, Shipley & Associates, Fort Wayne, IN, for Plaintiff.

Arthur Surguine, Jr., Hunt Suedhoff Kalamaros, LLP, Fort Wayne, IN, for Defendant.

### DECISION CONCERNING FEES

ROBERT E. GRANT, Bankruptcy Judge.

This is a civil contempt proceeding. It was initiated because the plaintiff claimed the defendants were violating the discharge injunction. By a decision and order issued on February 1, 2006, the court agreed, found the defendants in civil contempt of court, and concluded that the plaintiff was entitled to recover her actual damages of $5,348.20, together with the reasonable costs, expenses and attorney fees associated with prosecuting the action. Plaintiff's counsel filed affidavits itemizing the fees and expenses sought, the defendants filed timely objections, and that issue is now before the court for a decision. The parties have stipulated that the itemizations of time in counsels' affidavits reflect the actual work performed, the time expended for each task and that counsels' hourly rates are reasonable.

They have also agreed that the matter may be submitted without trial, based upon the information contained in counsels' affidavits, together with the other stipulations and explanations contained in the pre-trial order.

In addition to the amounts awarded as actual damages by the court's earlier decision, Plaintiff seeks a total of $25,874.69. Of this total, $460 is attributable to the labors of Patricia Lang, debtor's attorney in the underlying bankruptcy case; $2,033 is attributable to the labors of Daniel Graly, debtor's domestic relations attorney; and the remaining $23,381.69 is attributable to the labors of Grant Shipley and his office, debtor's counsel in this adversary proceeding. Defendants object to these fees and, for a variety of reasons, contend that they are not reasonable.

As an initial matter, the court will acknowledge that the amount sought is higher than what it would normally expect to see for a simple proceeding designed to enforce the discharge injunction of § 524. By the same token, however, the court has never seen a proceeding to enforce the discharge injunction (or its cousin the automatic stay) that was so stubbornly resisted. Most problems of that nature seem to be resolved amicably through an exchange of correspondence. To the extent litigation is required, the dispute rarely goes beyond the pleadings stage before settling. Here, however, the matter required not only a trial and post-trial briefs, but Plaintiff found it necessary to seek a preliminary injunction, together with all that entailed. *See e.g.,* N.D. Ind. L.B.R. B–7065–1. So, to the extent Defendants complain that the fees sought are too high, the wound is self-inflicted.

What constitutes a reasonable attorney fee is a matter committed to the court's discretion. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d

40 (1983). One of the most widely accepted methods for making the determination is to multiply the number of hours counsel reasonably devoted to the matter by a reasonable hourly rate. This is the lodestar method and it provides an objective basis for making a determination concerning the value of counsel's services. *Id.* at 1939.

In *Matter of Hunt's Health Care, Inc.*, 161 B.R. 971 (Bankr.N.D.Ind.1993) this court extensively discussed the lodestar approach and the responsibilities it allocates to the different participants in the fee process—the applicant, the objectors, and the court. Although made in the context of reviewing an application for attorney fees that had been submitted pursuant to § 330 of the United States Bankruptcy Code, the court's comments with regard to the process by which a reasonable attorney fee is determined apply any time the lodestar method is used.

> The applicant bears the burden of proving its entitlement to fees by initially presenting sufficiently detailed information or evidence concerning its services to give rise to the presumption of reasonableness attached to the lodestar calculation. Objectors have the responsibility to challenge this information and to produce evidence controverting that produced by the applicant. The court's role in the process should be limited to making findings of fact based on the evidence and information properly presented to it, measuring those facts by the applicable legal standard, and determining the reasonable fee that results from the application of the law to the facts. *Hunt's Health Care,* 161 B.R. at 981.

The court should not justify a fee for an applicant who has failed to do so for itself; neither should it fashion an objection for a complaining party who has failed to take advantage of the opportunity to formulate an argument why the requested fee is too high and, if necessary, offer proof in support thereof. *Hunt's Health Care,* 161 B.R. at 983.

In addition to challenging specific components of the fees sought, the defendants raise two broad challenges to the plaintiff's right to recover fees. First, they argue that the case came close to settling, therefore no fees should be awarded. Second, they argue that there was no justification for the prosecution of the case after the defendants dismissed those portions of their state court proceeding which led to the proceedings in this court, and so no fees should be recovered for the work done after that date. Although mentioned in the pre-trial order, these arguments have not been advanced in the defendants' brief and apparently have been abandoned. Nonetheless, the court addresses them for the sake of completeness.

The court is aware of no legal principle that stands for the first proposition Defendants assert—that a party who has a right to recover attorney fees will lose that right if the litigants come close, but fail, to settle their dispute. While the court is willing to accept the theoretical proposition that a litigant's refusal to accept an offer of settlement may have a bearing on the reasonableness of the attorney fees sought as a result of the continued litigation, to make that determination the court should be able to compare the offer that was refused with what the plaintiff sought and then received at trial. *Moore v. University of Notre Dame,* 22 F.Supp.2d 896, 909 (N.D.Ind.1998). The stipulated facts do not give the court the information needed to make that comparison. At best, we know only that the parties came close to a settlement but were unable to agree upon one. We do not know what that settlement was or why their negotiations failed.

Defendants also argue that there was no point for the plaintiff to continue to prosecute this action after they dismissed portions of their state court action against her. They did so on the eve of the hearing on Plaintiff's motion for a preliminary injunction, which essentially sought an order from this court prohibiting the defendants from going forward with that part of their action. Defendants apparently argue that once they stopped their objectionable conduct the contempt action in this court no longer served any purpose.

■ Defendants' argument overlooks the purposes for civil contempt proceedings, of which there are two. One part of a contempt proceeding is designed to compel compliance with the court's orders, in other words enforce obedience. The second purpose for a contempt proceeding is to compensate the beneficiary of the court's order for the damages it sustained as a result of the disobedient party's failure to comply. As of the date they dismissed their inappropriate state court proceedings, the plaintiff had already sustained actual damages because of the defendants' disobedient conduct and had already been forced to incur costs, expenses and attorney fees in an effort to vindicate her rights. The plaintiff was entitled to continue this action in order to recover compensation for her losses. Anything less would make disobedience a riskless endeavor because a contemnor could avoid any adverse consequences to itself by ceasing its contemptuous actions before the court could address them. That would put all the burdens of enforcing compliance upon the beneficiary of the court's order and visit none of the costs of disobedience upon the one who was obligated to obey the order.

The defendants could have limited their exposure by making some kind of offer of judgment—say by acknowledging that the obligations in question had been discharged, that their efforts to enforce them were contemptuous, and recognizing that the plaintiff had a right to recover damages including the reasonable costs, expenses and fees incurred as of that date. Such an offer would have taken many issues off the table, refocused the attention of all concerned by moving it away from the nature of the defendants' actions and placing it upon the economic consequences of those actions to the plaintiff. Depending upon how generous the defendants made their offer of judgment, it might have put them in position to recover the costs they incurred from that moment on if the plaintiff did not receive a more favorable outcome following trial. *See*, Fed. R.Civ.P. Rule 68.

Defendants never made an offer of judgment in this case and so the initial focus of the litigation was always upon them and their conduct and whether it violated the discharge injunction. Thus, the core issue around which the entire litigation was structured never went away and it did not go away simply because the defendants dismissed their state court proceedings. Despite having done so, the defendants continued to maintain that their actions were proper, that the obligations in question had not been discharged and that they had not violated the discharge injunction. In the pre-trial order dated June 27, 2005, Defendants clearly maintained that the obligations in question were in the nature of maintenance and therefore not dischargeable—an argument which was waived following trial and which the court noted was "so weak as to be all but completely frivolous." Decision and Order dated February 1, 2006, p. 4. Without an acknowledgment that the obligations in question were discharged, Plaintiff faced the distinct possibility that the defendants would renew their objectionable conduct once they were no longer under this court's scrutiny and that the entire contempt process would

have to begin again. Indeed, the defendants subsequently tried to get the state court to determine that their actions were appropriate, by including findings to that effect in proposed findings of fact and conclusions of law submitted to the Allen Circuit Court in June of 2005—six months *after* they had voluntarily dismissed that part of the state court action which was the focus of this proceeding. *See*, Plaintiff's Exhibit 14, ¶ 37. The plaintiff had every reason to continue to prosecute this action through trial and to judgment.

█ In addition to the blanket objections to fees which the court has already discussed, the defendants have more focused objections directed to the individual applicants and to portions of the time they devoted to this matter. Where Ms. Lang is concerned, the additional fees sought involve time associated with her testimony at trial. Ms. Lang was the debtor's attorney in the underlying bankruptcy case and actions she took in that case were associated with laying the predicate foundation for this adversary proceeding, all of which she described in her trial testimony. The defendants contend that the time in question should not be compensated because the facts she testified to at trial could have been put before the court in some other fashion, such as through judicial notice or stipulations. There is no argument that the information Ms. Lang provided was not appropriate or that the facts presented to the court through her were not relevant. The argument is not directed to the facts themselves but to the manner in which those facts were proved. The court finds that it was entirely appropriate not only for the plaintiff to offer evidence of the facts Ms. Lang testified to but also to do so through her testimony. Given the procedural requirements for taking judicial notice, *see*, Fed.R.Evid. Rule 201(d), (e); N.D. Ind. L.B.R. B–7007–1(a), the court doubts that the substance of Ms. Lang's testimony could have been replicated more economically through the process of judicial notice and there is no suggestion that the defendants tried to ease plaintiff's burden at trial by offering to stipulate to those facts. In view of the relatively small amount of the fees in issue the court finds that the plaintiff's actions were reasonable.

Daniel Graly was the plaintiff's domestic relations counsel and the defendants' efforts at attempting to collect a dischargeable debt required him take actions that would have been unnecessary had the defendants obeyed the discharge injunction. In addition to the amounts awarded as actual damages in the court's original decision, the plaintiff also seeks $2,033 because of his labors. Although the defendants have objected to some of Mr. Graly's fees, all of the time and services they contend should not be compensated were the subject of what was sought at trial and was previously awarded in the court's original decision; the time to question them has passed. Defendants make no challenge to the additional fees sought on account of Mr. Graly's labors and the court finds that they are appropriately recoverable.

The bulk of the defendants' objections are focused on the fees sought by Mr. Shipley, debtor's counsel in this adversary proceeding, and his staff. While the defendants have identified a number of specific entries that they complain about, all of their complaints suffer from one or more of the following shortcomings: [1]

1. they assume facts which are not in evidence;
2. they misrepresent the evidence which is in the record; and/or,

---

1. The court will not individually discuss each of the separate complaints Defendants have concerning Mr. Shipley's fees. Nonetheless, it has considered them all and is satisfied that each of them suffers from one or more of the deficiencies about to be discussed.

3. they have failed to come forward with evidence substantiating their complaints.

As for the first category, the court begins by recognizing that the parties have already stipulated that counsel's itemization "reflects the actual work performed and the time expended for each task." In other words, the parties have stipulated that Mr. Shipley and his staff actually did the things the affidavit says was done and that it actually took them that long to do so. Accordingly, to the extent Defendants raise arguments to the effect that it does not take X amount of time to do this, that or the other thing, the argument is precluded by the parties' stipulation. They have already agreed that this, that or the other thing was indeed done and it actually took the amount of time stated to do that thing.

Among the items that are the subject of this type of challenge is # 3 on the defendants' list. The challenged entry reads:

1/19/2005 DMO Prepare and send fax to Attorney Surguine re: Nugen answer to complaint (.2).

Defendants argue that it does not take twelve minutes to say to a staff member please fax this answer to Mr. Surguine. The court will take judicial notice that that is true. The defendants' objection assumes that this is all Ms. Oetting did; yet, in view of the fact that the task actually took her twelve minutes, we know this could not possibly be the case. Something more than simply giving instructions to a staff member, such as the actual preparation of the fax, had to be involved and, given the parties' stipulation, apparently was.

■ In this and similar areas, such as item # 4 relating to an invoice, the defendants contend that these are administrative functions which should not be compensated and, in the case of preparing an invoice, should not take the time it did.

Yet, there is no evidence concerning what administrative functions might involve or that what counsel actually did appropriately falls into that category. The court can not readily say, as a matter of law, that certain things constitute administrative functions while others do not: it depends upon what was actually done and many tasks may or may not fall on the administrative, rather than the attorney, side of the line depending upon what was actually involved. Where that is the case, absent evidence to the contrary, the court should respect counsel's business judgment and the allocation of responsibilities between lead counsel, junior attorneys, paralegals, and secretaries. Without evidence the court is not in a position to pass judgment upon the reasonableness or the propriety of counsel's allocation.

Take, for example, Defendants' complaints concerning the preparation of an invoice. In their brief they argue such invoices are generated by a computer and retrieving this information should not take thirty-six minutes regardless of who does it. The court will readily acknowledge that it should not take thirty-six minutes to simply pull up an invoice on a computer screen and hit the print button, and if that is all that is done it certainly is an administrative function. Nonetheless, the review that the court expects counsel to give to its invoices to make certain that they are complete and accurate, and which is necessary in order for counsel to exercise the required billing judgment, most certainly is not an administrative task.

Another example of an objection which assumes facts not in evidence is defendants' challenge # 7, 1.3 hours for letters to the plaintiff and witnesses advising them of the trial date. Defendants acknowledge that these letters were necessary. Their contention is that "it does not take an hour and 18 minutes to write three

identical letters...." Defendants' Brief in Opposition, p. 6. Remember, the parties have stipulated that it actually took an hour and 18 minutes for counsel to write these letters, and depending upon what was said to each recipient it could not only actually but also reasonably have taken that amount of time. Defendants' argument is based upon the assumption that the letters are identical—and probably relatively brief—and those are facts which have not been put before the court.

■ A final example of an objection which is based upon assumptions that are not supported by the evidence is the defendant's objection to compensating Mr. Shipley's associate, Ms. Oetting, for the time she spent at trial. They argue that she "did not participate in any fashion in the trial itself," Defendants' Brief in Opposition, p. 7, and thus conclude her attendance was unnecessary. While it is true that Ms. Oetting did not question any witnesses or advance any arguments to the court at trial it would be incorrect to infer from this, as the defendants do, that she "did not participate in any fashion." Many is the time that a younger attorney has rendered valuable assistance at trial to a more senior colleague without ever saying a word that would be taken down by the court reporter. In light of this, the court is not willing to conclude that just because an attorney does not have a speaking part they do not participate in trial. Neither can the court conclude that Plaintiff had no need for two attorneys at trial. In their original joint pre-trial order counsel advised the court that it would take an entire day to try the case and it had been budgeted as such on the court's calendar. Admittedly, the actual trial took only half that time but attorneys must make their staffing decisions before the event and not with the benefit of hindsight. The court cannot conclude that it was inappropriate to have two attorneys at trial. *Norman v. Hous-*

*ing Authority of City of Montgomery,* 836 F.2d 1292, 1302 (11th Cir.1988).

The second aspect of the defendants' objection is the one that the court characterizes as misrepresenting the facts which have been put before the court. An example of this is the time which the defendants contend Ms. Oetting devoted to "supervising labeling of exhibits." The entire argument is based upon a mischaracterization of the description of her time. The actual statement is as follows: "complete preparation of exhibits; supervised final labeling and organization of exhibits (2.0)." Defendants have taken one element of a much larger task and try to contend that this single thing was all that counsel did. The argument is as unsuccessful as it is disingenuous.

A theme that seems to be running through many of the defendants' arguments are complaints concerning the sufficiency of the way in which counsel's time has been described, and so we come to the last of the court's groupings for the objections to counsel's fees. It appears that the defendants expect counsel to describe their labors in minute detail rather than more broadly. Thus, entries such as prepare and fax a document are construed as referring to nothing more than giving instructions to a staff member, reviewing a fee invoice becomes nothing more than printing out a computer generated time log, letters to witnesses become three identical letters, and attendance at trial when another attorney was also present and took the lead role means no participation in any fashion. While the court will not underestimate the importance of counsel's need to itemize and describe the services for which compensation is being sought, there must be a balance between too much and too little information when describing counsel's labors. The court is not looking for a novella or a short story but only the gener-

al subject matter of what was done, *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941 n. 12, and the amount of information provided should be guided or determined by the reason the information is needed. *See also, Berberena v. Coler,* 753 F.2d 629, 634 (7th Cir.1985)(entry when read in context should be sufficient to identify the substance of the work done).

To begin with, the whole purpose of the lodestar approach to fees is to give the court an objective basis by which to value counsel's labors. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. Timekeeping and hourly billing facilitate this, unlike the old "for services rendered" bills of a bygone era. Describing the services also helps the reader review the bill for errors and make certain that the services in question actually relate to the matter for which compensation is being sought. For example, if counsel seeks compensation for attending a three hour hearing on March 1 and the court held no hearing on that date, it is relatively obvious that the time in question has been billed to the wrong client. Similarly, where the bill is being paid by a third party, the obligation to do so may extend to only a portion of what counsel did—say one component of a multi-count complaint—and the description of services serves to link what counsel did to the third party's obligation to pay. Here, for example, the defendants are only obligated to pay Mr. Shipley's fees associated with the contempt action, not for other legal services he might have rendered to his client; so if time associated with business planning or tax preparation matters was somehow included in the fee request, the description of those services would serve to identify them as lying beyond the scope of the defendants' duty to pay. Finally, the description is also designed to help the recipient form an opinion as to the reasonableness of the labor in relationship to the task. In sum, the description should be sufficient to give those reviewing the bill information concerning the general nature of the services performed so that they can form an opinion concerning the accuracy of the bill, its reasonableness and, if the time involved seems disproportionate to the task, to inquire further. Having had the opportunity to make those inquiries, if there continue to be questions concerning the accuracy of the bill or the reasonableness of the time involved, the issue can be broached based upon complete information concerning precisely what was done, whether it related to the matter for which compensation is being sought, how much time it consumed, and whether that time was proportional (or reasonable) in light of the effort required.

In this instance, the manner in which counsel's services have been described is sufficient to properly facilitate the task of intelligently reviewing counsel's bill and informing the need for making further inquiries. Defendants have also had the opportunity to make those inquiries and to seek additional information concerning precisely what was done and what was accomplished, both informally and through the formalities of the discovery process offered by the schedule for this aspect of the litigation. Order dated May 25, 2006. In light of this, if the underlying documentation substantiating counsel's affidavit was not adequate, the court would expect to hear about it, or at least be given evidence concerning what that documentation consisted of so that an argument concerning whether or not it was sufficient to support the entry could then be advanced based upon real facts and information and not speculation or assumptions. The court would also expect the pre-trial process to answer questions such as what does prepare and send a fax specifically entail, does reviewing an invoice involve merely printing off a computer screen or something more, and even though she may not have spoken for the record, what precisely did

Ms. Oetting do at trial in her supporting role? As the court emphasized in *Hunt's Health Care:*

> A party objecting to a fee application may not do so based on the general proposition that the fee sought is simply too much. It should go beyond this assertion, to articulate a reason why and, if necessary, present evidence in support thereof … *Hunt's Health Care,* 161 B.R. at 982.

Defendants have failed to do so and have waived the right to challenge the reasonableness of the time expended. *Eggleston v. South Bend Community School Corp.,* 1996 WL 441849 at *4 (N.D.Ind.1996).

█ In addition to the fees themselves, Plaintiff is also entitled to prejudgment interest. "Prejudgment interest is an ingredient of full compensation." *In re Milwaukee Cheese Wisconsin, Inc.,* 112 F.3d 845, 849 (7th Cir.1997). Its purpose is to recognize the time value of money and that the value of an award is diminished by a delay in receiving it. This is no less true of attorney fees than it is for any other award. *See, Smith v. Village of Maywood,* 17 F.3d 219, 221 (7th Cir.1994). Consequently, "prejudgment interest should be awarded unless there is a sound reason not to do so." *Milwaukee Cheese,* 112 F.3d. at 849. As for the rate of interest, unless the court wants to engage in a sophisticated and individualized rate setting proceeding—something it has no desire to do given that it would undoubtedly require discovery, expert testimony and further delay—in the Seventh Circuit the appropriate rate for pre-judgement interest is the prime rate at the applicable time, *Cement Div., Nat. Gypsum Co. v. City of Milwaukee,* 31 F.3d 581, 587 (7th Cir.1994); this is generally regarded to be the date litigation was commenced or the date a demand was first made.

█ Given the nature of the issues presented in this proceeding, the court does not believe that either of the traditional dates are an appropriate starting point for prejudgment interest. This does not, however, mean that an award is not appropriate or that it is not possible to determine a date at which interest should begin to accrue. That date is February 1, 2006. That is the date upon which the court issued its original decision and order finding the defendants in civil contempt of court and determining that Plaintiff's actual damages as a result of their misconduct totaled $5,348.28. That is also the date upon which the court concluded that the plaintiff was entitled to recover the reasonable costs, expenses and attorney fees it had incurred in prosecuting the action. Thus, Plaintiff's rights were fixed as of that moment and February 1, 2006 represents an appropriate date to begin to accrue interest on the economic value of those rights. *Smith,* 17 F.3d at 221 The court takes judicial notice that the average prime rate on February 1, 2006, was 7.5%. The Federal Reserve Board, http://www.federalreserve.gov/releases/h15/data/Daily/H15—PRIME—NA.txt (last visited March 30, 2007).

In light of the foregoing, in addition to the damages awarded by the court's decision and order of February 1, 2006, Plaintiff is also entitled to recover the sum of $25,874.69, for a total award of $31,222.89, together with interest thereon at the rate of 7.5% per annum from February 1, 2006, to the date of judgment. Judgment will be entered accordingly.