**In re John T. SAUNDERS, Debtor.**

**Bankruptcy No. 89–50883–C.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Jan. 8, 1991.

---

See also 112 B.R. 844.

---

## MEMORANDUM DECISION AND ORDER

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration the FIRST APPLICATION FOR ALLOWANCE OF FEES AND EXPENSES OF FOSTER, LEWIS, LANGLEY, GARDNER & BANACK, INCORPORATED FOR THE PERIOD JANUARY 23, 1990 THROUGH AUGUST 10, 1990. Upon consideration of the evidence presented, the arguments of counsel and the pleadings in the matter, the court enters this its decision and order.

### JURISDICTION

This court has original subject matter jurisdiction over the matter pursuant to 28 U.S.C. Section 1334 and may enter a final order with respect thereto. 28 U.S.C. § 157(c)(2). This matter constitutes a core proceeding under 28 U.S.C. Section 157(b)(2)(B).

### FACTUAL BACKGROUND

The attorneys for the debtor have filed an application for the allowance of fees and expenses rendered to the debtor-in-possession as a chapter 11 administrative priority claim. The law firm of Foster, Lewis, Langley, Gardner and Banack, Inc. ("Applicant") is requesting $169,145.50 for legal

services rendered and $8,759.95 for out of pocket expenses for the period of January 23, 1989 through August 10, 1990. Applicant received a prepetition retainer in the amount of $81,327.60. There have been no objections filed.

## FINDINGS AND CONCLUSIONS

■ Pursuant to Sections 330 and 331 of the Bankruptcy Code, all professionals applying for fees must demonstrate that the services were actual, necessary and reasonable. Bankruptcy Rule 2016(a) requires that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Even if no objections are raised to the fee application, as is the case here, the court nonetheless has a duty to independently examine the reasonableness of the fees. *In re Stoecker*, 114 B.R. 965, 969 (Bankr.N.D.Ill.1990); *In re Westside Creek Ltd. Partneship*, 93 B.R. 177, 179 (Bankr.E.D.Ark.1988); *In re NRG Resources, Inc.*, 64 B.R. 643, 650 (W.D.La. 1986); *In re Malden Mills, Inc.*, 42 B.R. 476, 479 (Bankr.D.Mass.1984). In determining the reasonableness of the legal fees requested the court must utilize the twelve factors discussed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir.1974). *Matter of First Colonial Corp. of America*, 544 F.2d 1291, 1298 (5th Cir.1977), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). Those factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) the awards in similar cases.

The court has systematically applied each of the twelve factors and finds all of them satisfied except the time and labor requirement and the amount involved and the results obtained requirement. These are addressed in more detail below.

*Time and Labor Required*

■ Approximately 1343.70 hours were billed in this case. The average lodestar was $125.00 per hour. Approximately 81.90% of the hours billed were billed by three (3) attorneys with the remaining hours being billed by ten (10) attorneys, four (4) paralegal and various law clerks. Approximately $95,527.00 was billed by two (2) attorneys, Messrs. Kingman and Wilson. The time sheets submitted to this court indicate a substantial number of conferences attended by both Kingman and Wilson and for which both Kingman and Wilson billed. The time sheets submitted also indicate a substantial number of conferences at which numerous attorneys, other than Kingman and Wilson, attended and billed. This pattern of billing appears to be duplicative.

In *In re Mid–State Fertilizer Co.*, the court noted that "[w]hile some intraoffice conferences may be necessary, no more than one attorney may charge for it unless an explanation of each attorney's participation is given." *In re Mid–State Fertilizer Co.*, 83 B.R. 555, 556 (Bankr.S.D.Ill. 1988) (quoting from *In re Wiedau's, Inc.*, 78 B.R. 904 (Bankr.S.D.Ill.1987)); *see Johnson*, 488 F.2d at 717 ("the time of two or three lawyers in a courtroom or conference when one would do may obviously be discounted"); *In re Leonard Jed Co.*, 118 B.R. 339, 347 (Bankr.D.Md.1990) (holding that "excessive use of office conferences and unnecessary duplication of effort will result in reduction of fees when they are unreasonable ..."); *In re Microwave Products of America*, 102 B.R. 661, 665 (Bankr.W.D.Tenn.1989) ("where multiple attorneys attend hearings and conferences, there must be a showing that each attorney contributes to the hearing or proceeding") (quoting *In re Wabash Valley Power Assn.*

*Inc.,* 69 B.R. 471 (Bankr.S.D.Ind.1987)); *In re Chicago Lutheran Hospital Ass'n,* 89 B.R. 719, 736 (Bankr.N.D.Ill.1988) ("[g]enerally, attorneys should work independently, without the incessant 'conferring' that so often forms a major part of many fee petitions."); *In re Amatex Corp.,* 70 B.R. 624, 626 (Bankr.E.D.Pa.1985) ("[t]he bankruptcy estate should not bear the cost of compensating each attorney present at an intra-office conference unless counsel can show that the estate benefited from each attorney's special area of expertise. In the absence of a showing of the purpose of the conference and why the conference was essential to efficient management of the case, [the] court will not award full compensation to each attorney present at the conference").

In approximately 98 hours of lumped billing no explanations, or extremely inadequate explanations, have been submitted for the conferences, inter-office conferences, and staff meetings charged to the estate.[1] The Fifth Circuit has held that a "trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities." *Johnson,* 488 F.2d at 717. Based upon this court's experience, for the issues involved and the complexity of the case, as a function of the time and labor required, the fees sought are excessive. Simply stated, too many unsubstantiated and duplicative hours were billed in handling this bankruptcy matter. Accordingly, 98 hours of legal billing (representing a *lenient* estimate of duplicative conferences, inter-office conferences and staff meetings), at the lodestar rate of $125.00 per hour, for a total reduction of $12,250.00, will be disallowed.

*The Amount Involved and the Results Obtained*

■ Weighing the amount of fees involved relative to the results obtained invokes a necessarily inexact standard. Nonetheless bankruptcy courts are required to draw on their experience to evaluate whether the overall amount requested is justified by the size of the case and the results obtained.

■ Even by that admittedly loose standard, the results achieved in this real estate case do not warrant the fees requested. A real estate reorganization is primarily a matter of refinancing secured debt to accommodate soft market conditions. There is very little to reorganize operationally as compared to a manufacturing or retail sales business, for example. A lengthy stay in chapter 11 *cannot* be justified in the average real estate reorganization. *See In re Southwest Oil Co. of Jourdanton, Inc.,* 84 B.R. 448, 452 (Bankr.W.D.Tex. 1987) ("Congress believed that 120 days would be adequate in most cases to give the debtor time to negotiate a settlement, but that an extremely large company would probably need an extension"). If a consensually renegotiated debt is frustrated by lender recalcitrance, chapter 11 gives the debtor ample ammunition with which to quickly force the issue. *See, e.g., In re Greystone III Joint Venture,* 102 B.R. 560 (Bankr.W.D.Tex.1989).

This case languished in chapter 11 for over a year without a plan ever being filed. Adequate protection orders were put in place for lenders, but the debtor was unable to perform under them. A default on one of those orders plunged the case into liquidation. Such lackluster results in a real estate case will not support an exceptional fee award. The amount of fees requested in this case could only be justified by stellar performance and an exceptional outcome.

In *In re Coastal Equities, Inc.,* the court held that a plan which is not fully implemented and which fails is worth less than a successful one and attorneys for the debtor who prepare such a plan should receive less for their efforts. *In re Coastal Equities, Inc.,* 39 B.R. 304, 311 (Bankr.S.D.Cal.1984); *see U.S.A. Motel Corp. v. Danning,* 521 F.2d 117, 119 (9th Cir.1975). The court in *In re Public Service Company of New*

---

1. Generally, courts will not compensate for time entries that are lumped together. In order for the court to determine whether time spent on an activity was reasonable, multiple services cannot be "lumped" under one time entry. *In re Pettibone,* 74 B.R. 293, 307 (Bankr.N.D.Ill.1987).

*Hampshire* (commenting on the high hourly charges), observed that reorganization counsel charging substantial fees for their expertise in producing exceptional results in reorganization cases are expected to show that that expertise was in fact employed in the case at hand. *In re Public Service Company of New Hampshire,* 102 B.R. 276, 278 (Bankr.D.N.H.1989). In *In re Garnas,* the court reduced fees by some 50% where during nearly one year that the case was pending no plan of reorganization was ever filed and the case was ultimately dismissed. *In re Garnas,* 40 B.R. 140 (Bankr.D.N.D.1984); *see In re Tamarack Trail Co.,* 25 B.R. 259, 260 (Bankr.S.D.Ohio 1982) (debtor's attorney should receive less when efforts are unsuccessful than where successful).

"Efforts which have been met by failure cannot be compensated at the same rate as those which have been successful because the paramount element of value to the estate is missing." *Garnas,* 40 B.R. at 142; *see also In re Sandra Cotton, Inc.,* 91 B.R. 657, 659 (W.D.N.Y.1988) (attorneys for debtors are entitled to compensation only if the services rendered *were of value* to the administration of the estate or for its benefit); *In re Grabill Corp.,* 110 B.R. 356 (Bankr.N.D.Ill.1990) (attorneys are not entitled to compensation from funds of the bankruptcy estate unless those services benefit the estate); *In re Marker,* 100 B.R. 569 (Bankr.N.D.Ala.1989) (services rendered by debtor's attorney must be found to have benefited the estate in some way for the attorney to be compensated out of funds of the estate). "In the final analysis the Court ... must make a subjective evaluation of the reasonableness of the fees sought in light of the services rendered ... and *the results achieved.*" *In re Western Office Partners, Ltd.,* 105 B.R. 631, 637 (Bankr.D.Colo.1989) (emphasis added) (quoting *In re Frontier Airlines, Inc.,* 74 B.R. 973 (Bankr.D.Colo.1987)). The court is unable to discern such a benefit to the estate that would warrant the amount of fees here requested.

Applicant points to its efforts to help the debtor carry on its business while in chapter 11. It is questionable whether those efforts benefited *the estate* (as opposed to the debtor) to justify the degree of compensation here sought. *In re Coastal Equities, Inc.,* 39 B.R. at 311; *U.S.A. Motel Corp.,* 521 F.2d at 117; *In re Public Service Co.,* 102 B.R. at 278; *In re Garnas,* 40 B.R. at 140; *In re Tamarack Trail Co.,* 25 B.R. at 260. Were more assets made available to pay down claims of the estate? Were claims against the estate reduced in an amount that would justify over $169,-000.00 in fees? Was any of the secured debt permanently restructured? Were preferences recovered at a cost efficient rate? The court certainly recognizes that there is no sin in converting a chapter 11 case to a chapter 7. However, the record does not support any rational justification for the amount of legal fees requested in light of that conversion.

The court holds, therefore, that applicant has failed to show a sufficient benefit to the estate to warrant $169,145.50 in legal fees. Following the dictates of *Johnson* to call upon personal experience, this court finds that no more than 80% of the requested fee can be justified by the results obtained in this case. Applicant's fees shall be reduced by 20%, or $33,829.10.

■ The court will also disallow $2,500.00 in legal fees for certain work done after the conversion date (January 4, 1990). "The clear weight of authority supports the proposition that reasonable compensation under § 330(a)(1) for actual, necessary services means services that benefit the debtor's estate, not the debtor." *Stewart v. Law Offices of Dennis Olson,* 93 B.R. 91, 95 (N.D.Tex.1988). A review of the time sheets indicates that legal research on the issue of converting from a chapter 11 to a chapter 7 was done after the case had already been converted. This is not a compensable benefit to the estate. The services of debtor's counsel in a chapter 7 case that benefit the estate are essentially limited to analyzing the debtor's financial condition, rendering advice and assistance to the debtor in determining whether to file a petition in bankruptcy, the actual preparation and filing of the petition and the required schedules and statements,

and representing the debtor at the § 341 meeting of creditors. *Stewart,* 93 B.R. at 95; *In re Tabala,* 48 B.R. 871, 873 (S.D.N.Y.1985) (quoting *In re Olen,* 15 B.R. 750, 752 (Bankr.E.D.Mich.1981). Applicant's billing is proper for attendance and preparation for the 341 meeting. Revamping the debtor's schedules of financial matters was also compensable. The remainder of the legal work done post-conversion yielded benefit only to the debtor, for which the estate is not liable. *Stewart,* supra, at 95.

After a detailed review of the time sheets submitted by Applicant, this court holds that the total amount of legal fees requested shall be reduced in the overall amount of $48,579.10. Applicant's request for out of pocket expenses in the amount of $8,759.95 shall be approved in full.

So ORDERED.