15 F.3d 1089
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 In re S & G PRESS, INC., Debtor.
BECKER LAW OFFICE, Appellant,
v.
UNITED STATES TRUSTEE, Appellee,
David A. Summers, Trustee of the S & G Press Estate, Trustee-Appellee.
 No. 92-16394.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 13, 1994.
Decided Feb. 8, 1994.
 
 1
 Before: GOODWIN, WIGGINS, and BRUNETTI, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 FACTS
 
 3
 S & G Press, Inc. ("S & G") blamed its business failure in part on Harris Graphics Corp. ("Harris"), alleging that Harris had sold S & G a faulty printing press. Unable to meet orders consistently, S & G lost its largest customer. The press had been financed by U.S. Concord, Inc. ("Concord"). S & G sued Harris and Concord. Attorney Gyemant represented S & G under a contingency fee arrangement: Gyemant was to take 25% of an award or settlement plus separate reimbursement for expenses. Harris and S & G settled, and $2 million was paid to S & G. From the settlement, Gyemant took $500,000 in fees and $240,000 in expenses.
 
 
 4
 S & G then filed for bankruptcy under Chapter 11. Appellant was appointed to represent S & G, which became debtor-in-possession ("DIP"). Appellant was given a $25,000 retainer, which it placed in trust. Then Concord, Mellon Financial Services Corp. ("Mellon") (another creditor), and later the Official Creditors' Committee ("Committee") demanded that S & G seek to recover the $740,000 from Gyemant. At S & G's direction, Appellant investigated the claim and advised the creditors that S & G did not intend to sue Gyemant.
 
 
 5
 Some time later, Appellant applied for almost $22,000 in interim attorneys' fees. Concord and Mellon objected, in part because S & G had refused to sue Gyemant. The court granted Appellant half of the fees requested, about $11,000, but ruled that Appellant could request the remainder later. No party appeals this interim order. Later, over S & G and Appellant's objection, a trustee was appointed. The trustee sued Gyemant. S & G's bankruptcy was also converted to a Chapter 7 case, without objection from S & G or Appellant.
 
 
 6
 Appellant filed two applications for final compensation. The first, the "DIP Application," described Appellant's work while S & G was DIP. The DIP Application alleged justifications and requested compensation for the following categories of services: (1) pre-bankruptcy consultation; (2) obtaining release of the printer litigation settlement funds from a TRO; (3) preparation of schedules and statements; (4) analysis of potential avoidance claims against certain trade creditors; (5) analysis of potential claims against Gyemant; (6) analysis of potential avoidance claims against Jan Small, a former employee of S & G; (7) analysis of whether accountants should be employed; (8) analysis of potential conflicts Concord's counsel might have had with debtor; (9) analysis of claims made by "Haljak," an entity related to S & G, to the $2 million obtained from Harris; (10) monitoring of Texas litigation which threatened to involve debtor; (11) analysis of whether fees paid to a turnaround consultant prior to bankruptcy were recoverable; (12) help with liquidation and sale of some assets; (13) analysis of Mellon's claims respecting proceeds from the sale of certain assets prior to bankruptcy; (14) preparation of a disclosure statement and "liquidating plan of reorganization"; (15) obtaining an extension of the period during which only debtor could propose a reorganization plan; (16) responses to requests for information from various creditors; (17) postponement of and later negotiation of the sale of certain real property; (18) opposition to the Committee's motion for appointment of a trustee; and (19) consideration of whether to consolidate S & G's bankruptcy with that of Haljak.
 
 
 7
 The second application, the "Post-DIP Application," covered services performed after a trustee was appointed. The Post-DIP Application requested fees for continuing services (14) and (16) after appointment of the Chapter 11 trustee and for assisting with the transfer of control from S & G to the Chapter 11 trustee.
 
 
 8
 Appellant sought compensation and expenses of $79,599.75 and $3,235.89, respectively, in the DIP Application, and $12,539.59 and $729.17, respectively, in the Post-DIP Application. Concord, Mellon, and the Committee objected to the applications. Appellant attempted to rebut their objections. After hearing oral argument, the bankruptcy court announced that it intended to allow compensation of $25,000, the retainer amount. Then, when the court remembered an interim award had been given, the court stated the $25,000 would be in addition to the interim award. However, when the bankruptcy court learned that the interim payment had come from the retainer, the court stated, "Okay, so credit has been given." ER 155, 18. With only this explanation, the court then stated the award would be the retainer amount minus the interim award, for a total, final award of $25,000.
 
 
 9
 As to why only the retainer amount was appropriate compensation for the services outlined above, the bankruptcy court explained as follows: "This was a liquidat[ion] case from the beginning[,]" and only the "considerable sum of money to be protected" justified as much as $25,000 in fees. ER 155, 18-21. Were it not for the large sum of money to be protected, the case could have been handled entirely in a Chapter 7 case at a considerable savings. Id. The bankruptcy court thought Appellant's efforts were justified only with regard to the Gyemant matter. Also, the court indicated it was "in agreement ... with ... counsel that ... there has not been a justification for the amount of work ... done after the appointment of a trustee or [a] benefit to the estate from those services." Id. The district court held that the bankruptcy court sufficiently articulated reasons for the bankruptcy court's decision. Appellant appealed.
 
 ANALYSIS
 
 10
 We review the bankruptcy court's ruling for abuse of discretion; findings of fact are binding unless clearly erroneous. Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc., 924 F.2d 955, 957 (9th Cir.1991). Questions of law are reviewed de novo. In re Nucorp Energy, Inc., 764 F.2d 655, 657 (9th Cir.1985).
 
 
 11
 Appellant notes that compensation is appropriate when fees for "properly compensable legal services" are adequately documented and the services were necessary and reasonably valued. Puget Sound Plywood, 924 F.2d at 957-58. Appellant was appointed DIP's legal counsel, and Appellant's services were legal services. The court made no finding that the fees were not adequately documented. The court's ruling therefore appears to rest entirely on necessity and valuation grounds.
 
 
 12
 Appellant's primary argument is that the bankruptcy court failed to set forth sufficient reasons for its decision. A bankruptcy court making a fee determination must state sufficient reasons to "show that the bankruptcy court acted on the basis of ... appropriate factors." In re Yermakov, 718 F.2d 1465, 1471 (9th Cir.1983); In re Hotel Hollywood, 95 B.R. 130, 133-34 (Bankr. 9th Cir.1988); see In re Buff-Henley Paper Co., 75 B.R. 551, 551-52 (E.D.Pa.1987). Ignoring or overlooking the reasons given by the bankruptcy court for awarding the retainer amount as total compensation, Appellant asserts that the bankruptcy court's decision states only, without other explanation, that the fees were "unjustified." Appellant says the bankruptcy court explained itself only as to Appellant's opposition to appointment of a trustee (as to which the court stated that Appellant was not justified in opposing something the creditors wanted so strongly). Appellant claims, however, that Appellant justified in its applications each service and each fee claimed, so that the bankruptcy court was required to explain why disallowed fees were unjustified. Appellant argues at length that its services and fees were justified. Appellant also claims the reorganization plan conferred a benefit on the estate, though Appellant does not identify the specific benefit conferred.
 
 
 13
 As to the Post-DIP Application fees, Appellant recognizes that such fees are only awarded when the underlying services confer an actual benefit on the estate. In re Xebec, 147 B.R. 518, 523-25 (Bankr. 9th Cir.1992). Appellant claims, however, that the Post-DIP services he provided conferred a benefit.
 
 
 14
 Finally, Appellant argues the bankruptcy court's valuation was arbitrary. The court gave little explanation for reducing the amount of the award from the retainer amount plus the interim award to the retainer amount minus the interim award, an almost $11,000 reduction. Appellant claims no legal reason exists to justify such a reduction. In re Metro Transp. Co., 107 B.R. 50 (E.D.Pa.1989) (holding that automatic halving of fees for intra-office conferences was arbitrary).
 
 
 15
 In response to Appellant's arguments, the U.S. trustee ("UST") asserts that the bankruptcy court's decision was adequately explained and reasonable. UST claims In re Buff-Henley is limited to uncontested fee cases. 75 B.R. at 552. Also, the In re Buff-Henley bankruptcy court gave no reasons for its decision, whereas the court here attempted to give some grounds.
 
 
 16
 As to whether Appellant's services were necessary, UST argues Appellant has failed to meet its burden to show that they were. See In re Riverside-Linden Inv. Co., 925 F.2d 320, 324-25 (9th Cir.1991). UST argues at length that the services outlined in the DIP Application were unnecessary. Moreover, UST notes that the bankruptcy court should consider the benefit to the estate and the results achieved. Puget Sound Plywood, 924 F.2d at 959; In re Taxman Clothing Co., 134 B.R. 286, 290 (N.D.Ill.1991); In re Saunders, 124 B.R. 234, 237-38 (Bankr.W.D.Tex.1991). UST argues that time drafting a plan and disclosure statement and other like efforts were of no benefit to the estate because the case should have been filed as, and was later converted to, a Chapter 7 case. UST also contends the Post-DIP Application services were neither necessary nor beneficial to the estate. See In re Xebec, 147 B.R. at 523-24. Appellant's Post-DIP work should have been done by the trustee or was duplicative of work the trustee did. See In re Marker, 100 B.R. 569, 570 (Bankr.N.D.Ala.1989) (holding duplicative services noncompensable).
 
 
 17
 UST does not attempt to explain the court's reduction of fees from the retainer amount plus the interim award to the amount of the retainer reduced by the interim award. But, Appellant notes that valuation requires some subjectivity. In re Saunders, 124 B.R. at 238. UST claims In re Metro Transp. is distinguishable, though UST cites only to parts of the case not relied on by Appellant. The Chapter 7 trustee joins the UST's brief.
 
 
 18
 We affirm. Our task is not to see whether reasons provided by the trustees or creditors could have supported the bankruptcy court's judgment. We determine only whether the bankruptcy court abused its discretion. Contrary to Appellant's view, the bankruptcy court sufficiently articulated its reasoning. Essentially, the court held that aside from the Gyemant matter, the case should have been brought under Chapter 7 rather than Chapter 11. Only a Chapter 7 case was necessary after the Gyemant matter was investigated. Furthermore, the court found that the fees would have been much less had this reasonable course been pursued.
 
 
 19
 These conclusions sufficiently justify a rejection or reduction of fees for nearly all services outlined in Appellant's applications. The following tasks, identified by number from the list above, were the duty of the Chapter 7 trustee after conversion, making Appellant's pre-conversion services unnecessary: 4, 6, 7, 8, 9, 11, 13, and 19. Moreover, the court's ruling implies that tasks 1, 2, 3, 10, 12, and 17 would have been accomplished more efficiently in a Chapter 7 case. Furthermore, rejection of fees for the following services is justified for specific reasons implied by the court's ruling: 14, because Chapter 7 provisions would have governed liquidation; 15, because no plan would have been necessary in a Chapter 7 case; 16, because no complicated conversion would have been necessary; and 18, because a trustee would have been automatically appointed in a Chapter 7 case, 11 U.S.C. Secs. 701-04. As to all of these services, the bankruptcy court's decision was not an abuse of discretion.
 
 
 20
 As to the Post-DIP Application, the bankruptcy court indicated that it agreed with objections suggested by the "counsel" opposing Appellant. ER 155, 20. By implication, the court thus rejected the Post-DIP services because such services did not benefit the estate. This rejection was not an abuse of discretion. Appellant's Post-DIP work may also have been unnecessary or duplicative, as the court implies and the UST suggests. Appellant has not challenged any finding of fact as clearly erroneous.
 
 
 21
 Because the court articulated its reasons in regard to both applications, In re Yermakov, In re Hotel Hollywood, and In re Buff-Henley are distinguishable. That the bankruptcy court rejected on other, additional grounds compensation for opposing the appointment of a trustee is irrelevant.
 
 
 22
 Finally, holding Appellant to the amount of the $25,000 retainer was not arbitrary. The bankruptcy court thought Appellant should receive in total no more than the entire retainer for work to which the retainer was meant to apply. The bankruptcy court explained its reduction of the award from the retainer amount plus the interim award to the retainer amount minus the interim award by stating that "credit has been given." If the bankruptcy court meant anything at all in saying "credit ha[d] been given," the bankruptcy court must have been interpreting its interim ruling. The bankruptcy court apparently reasoned that if the interim award came from the estate and not from the retainer, then the interim award must have been for services other than those which the retainer was supposed to cover. On the other hand, if the interim award came from the retainer, then the interim award must have been for services meant to be compensated from the retainer. "[C]redit ha[ving] been given" for those services, no more than the rest of the retainer would be given in the final award. Read in this light (and we have been unable to see any other reasonable reading), the bankruptcy court's somewhat cryptic ruling makes sense and is sufficiently articulated. Thus, In re Metro is distinguishable.
 
 
 23
 For the foregoing reasons, we AFFIRM.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3