### In re BLACKWOOD ASSOCIATES, L.P., Debtor.

**Bankruptcy No. 891–83867–20.**

United States Bankruptcy Court, E.D. New York, Westbury Division.

March 30, 1994.

Philip D. Beck, Stephen J. King, Harvis, Trien & Beck, New York City, for debtor.

Carla E. Craig, Hertzog, Calamari & Gleason, New York City, for Federal Home Loan Mortg. Corp.

Christopher P. Spera, Federal Home Loan Mortg. Corp., McLean, VA.

Scott Y. Stuart, Stan Y. Yang, Office of the U.S. Trustee, Garden City, NY.

## DECISION AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

The contested matter before the Court [1] involves a dispute concerning a fee application between two parties to a cash collateral stipulation: counsel to the debtor, Harvis, Trien & Beck ("HTB") and a creditor holding a secured claim, Federal Home Loan Mortgage Corporation ("FHLMC").

For the reasons set forth below, the Court holds that the award requested by HTB as counsel for the above-referenced debtor ("Debtor"), for actual and necessary services

---

1. The Court has jurisdiction over this case pursuant to sections 157(a), 157(b)(1) and 1334 of title 28, United States Code ("title 28") and the order of referral of matters to the bankruptcy judges by the United States District Court for the Eastern District of New York (Weinstein, C.J., 1986). This is a core proceeding pursuant to section 157(b)(2)(A) and (O) of title 28.

rendered and expenses incurred, is proper and reasonable, is not violative of a cash collateral stipulation entered into by HTB and FHLMC, and is therefore **GRANTED** in full.

## RELEVANT FACTS AND LEGAL DISCUSSION

Debtor is a limited partnership with a single asset which is a 1,744 unit apartment building ("Property"). The Property is encumbered by a first mortgage lien owned by FHLMC, a second mortgage lien owned by The Howard Savings Bank, and certain tax liens held by the Township of Irvington, New Jersey ("Township").

HTB was authorized to be retained as bankruptcy counsel to Debtor by order dated October 8, 1991, and HTB performed legal services for Debtor during the pendency of its case. On March 10, 1992, HTB filed its second request, pursuant to section 330 of title 11, United States Code [2] ("Bankruptcy Code" or "Code"), for an allowance of interim compensation for services rendered and reimbursement of expenses incurred in representing Debtor for the period May 16, 1992 through February 28, 1993 ("Fee Application").[3] By document filed March 25, 1993,

FHLMC objected to the Fee Application. FHLMC makes several arguments in opposition; the Court will list and separately address the merits of each of FHLMC's contentions.[4]

■ A. FHLMC correctly proclaims that all gross receipts received by Debtor postpetition from operation of the Property constitute "cash collateral"[5] which belongs to FHLMC. FHLMC argues that using its cash collateral to satisfy HTB's claim for compensation and reimbursement would be impermissible and violative of section 363 of the Bankruptcy Code. (FHLMC's Obj. at 4.); see 11 U.S.C. § 363(c)(2) (1994); supra note 5 (definition of "cash collateral" under the Code). Pursuant to section 363 of the Code, a debtor may not use cash collateral unless it has consent from any entity holding an interest in the cash collateral or court ordered authorization. Id. §§ 363(c)(2), 1107(a) (1994).

FHLMC and Debtor executed a cash collateral stipulation, dated August 31, 1992 ("Cash Collateral Stipulation"). The Cash Collateral Stipulation was "So Ordered" by the Court subsequent to its execution by the parties. The provision of the Cash Collateral

2. Section 330 of the Bankruptcy Code empowers the bankruptcy court to award to the debtor's attorney (or any professional person employed by the trustee or the estate, 11 U.S.C. §§ 327, 330, 1103 (1994)), reasonable compensation for "actual, necessary services rendered" and "reimbursement for actual, necessary expenses". 11 U.S.C. § 330 (1994).

3. A first interim allowance of fees and reimbursement of expenses was approved by the Court on June 25, 1992.

4. FHLMC makes two arguments that do not have enough credence to be addressed in the Court's opinion. In one argument, FHLMC contends that the Court may not award HTB fees pursuant to section 506(c) of the Code. (FHLMC's Obj. at 5–6) The Fee Application was not made pursuant to section 506(c), however, and for that reason neither the section nor FHLMC's argument is relevant. Our opinion only deals with FHLMC's substantive arguments in opposition to use of its cash collateral to pay Debtor's counsel's fees. See infra 2 passim.

Another argument made by FHLMC is that FHLMC consented to the use of its cash collateral, pursuant to a stipulation (both defined and discussed in the text), only for payment of HTB's

compensation allowance and expense reimbursement through May 15, 1992. (FHLMC's Obj. at 3). As stated, the period covered by the Fee Application at bar is May 16, 1992 through February 28, 1993. FHLMC's contention is explicitly refuted, however, by the terms of its stipulation with HTB, which provides: "The provisions of this Stipulation shall be effective as of July 1, 1992, and shall relate to Cash Collateral received by Debtor, expenses incurred by Debtor and the actions and inactions of Debtor *on and after July 1, 1992*." Cash Collateral Stipulation between FHLMC and HTB, dated August 31, 1992 (emphasis ours).

5. See 11 U.S.C. § 363(a), (c)(2) (1994). "Cash collateral" is a defined term:

'Cash collateral' means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

*Id.* § 363(a) (1994).

Stipulation which concerns Debtor's legal fees provides:

> FHLMC agrees that i) fees of the U.S. Trustee shall be paid from the Cash Collateral and, ii) Debtor's counsel's fees and disbursements approved by the Court upon requisite notice and application as required by the Bankruptcy Code and Rules shall be paid from the Cash Collateral. Nothing contained herein shall constitute a waiver of FHLMC's right to object on a substantive basis to particular amounts requested in any such fee application.

Cash Collateral Stipulation and Order Permitting Interim Use of Cash Collateral by Debtor, dated August 31, 1992, at 6.

By setting forth in writing both the procedure to be followed by Debtor's counsel in submitting a fee application, and FHLMC's rights and waivers in opposing such an application, the stipulating parties intended to be, and are, bound by the language therein. It is clear from the provision quoted that FHLMC's obscure argument that Debtor's use of its cash collateral violates section 363 and adversely affects its adequate protection fails. FHLMC cannot claim that it is not receiving adequate protection where Debtor's legal fees are paid from its cash collateral, since it agreed to make such allowances. (*See* Cash Collateral Stipulation at 6.) Furthermore, FHLMC, by the express terms of the Cash Collateral Stipulation, authorized use of its cash collateral and retained only the "right to object on a *substantive* basis to particular amounts requested in any such fee application." *Id.* at 6 (emphasis ours).

FHLMC's substantive arguments in opposition to the Fee Application are next analyzed.

B. FHLMC proposes that the fees sought by HTB are excessive and that therefore the Fee Application violates the standard imposed by section 330 of the Bankruptcy Code. 11 U.S.C. § 330 (1994); *see also id.* § 328 (1994). Several grounds for its

dissension are asserted; again, each will be assessed separately.

■ **(i) FHLMC** generally questions the reasonableness of $491,000 in legal fees incurred in a nine and one-half month period where no contested matters were litigated, the only court activity was an uncontested hearing on Debtor's first request for interim compensation, and the only papers filed were amended reorganization plans and objections to FHLMC's motion for relief from the automatic stay. However, FHLMC does concede "that this case did involve extensive, albeit unsuccessful, negotiations...." (FHLMC's Obj. 8.) The Court has given full consideration to this general, rather than substantive objection to HTB's Fee Application (though only substantive objections are authorized by the parties' Cash Collateral Stipulation, Cash Collateral Stipulation at 6). For the reasons we discuss, the Court holds that FHLMC does not satisfy its burden of demonstrating that the fees requested are unnecessary or unreasonable in amount.

■ The fee application process should be elementary. An entity making an application for fees must make a prima facie case in support of the requested award. *In re Hunt's Health Care, Inc.*, 161 B.R. 971, 980–981 (Bankr.N.D.Ind.1993); 11 U.S.C. § 330(a), 331 (1994); Fed.R.Bankr.P. 2016 (1994).[6] The Court has reviewed the Fee Application and the award requested by HTB. The Office of the United States Trustee also examined the Fee Application and raised no objection to it. We hold that the Fee Application contains all information and detail necessary for a presumption of reasonableness, and that a prima facie case for the requested fees has been made.

■ In its opposition, FHLMC, instead of substantively confronting the time allotments and tasks performed, at best, alleges an unsubstantiated dissatisfaction with the Fee Application. The amount requested by a fee application cannot be considered unrea-

---

6. The Bankruptcy Rules instruct:
> An entity seeking interim or final compensation for services or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amount requested.

Fed.R.Bankr.P. 2016(a).

sonable simply because one party feels it is excessive: "Objectors have the responsibility to challenge [the] information [presented in a fee application] and to produce evidence controverting that produced by the applicant.... '[A] gestalt reaction that there was too much time spent ... isn't good enough.'" *Hunt's Health Care*, 161 B.R. at 981–982 (quoting *Steinlauf v. Continental Ill. Corp. (In re Continental Ill. Sec. Litig.)* 962 F.2d 566, 570 (7th Cir.1992)). A party opposing a fee application must carry the burden of explaining what therein is unreasonable or, at least, what would be reasonable under the circumstances. Absent such evidence by the objectant, the opposition fails. *Id.* at 971 ("just as the district court ... could not properly reduce fees for 'inarticulate and unsubstantiated dissatisfaction with the lawyers' efforts to economize' ... this court should not heed a creditor's unexplained dissatisfaction") (quoting *Continental Ill.*, 962 F.2d at 570). It is not for the Court to supply such evidence or the detail required to support the objectant's overly general pleading. Thus, "[j]ust as the court should not justify a fee for the applicant, it should not have to fashion an objection for a complaining party." *Hunt's*, 161 B.R. at 983. For these reasons, the Court holds that the Fee Application cannot be reduced pursuant to FHLMC's general opposition.

(ii) Secondly, FHLMC argues that HTB seeks a compensation award for time detailed in the Fee Application which is not compensable. FHLMC claims that the Fee Application contains numerous entries which demonstrate "multiple billing". It argues that multiple billing is improper since a group of attorneys may bill for a discussion only where a proper explanation of each attorney's purpose in the meeting is set forth in the Fee Application; otherwise, only one attorney may bill for the discussion. FHLMC writes:

> To compensate HTB for this "double billing" is in contravention of applicable law. *See e.g., In re Navis Realty, Inc.*, 126 B.R. 137, 142 (Bankr.E.D.N.Y.1991) ("while some intra-office conferences may be nec-

essary, no more than one attorney may charge for it unless an explanation of each attorney's participation is given"); *In re Adventist Living Centers, Inc.*, 137 B.R. 692, 697 (Bankr.N.D.Ill.1991) ("As a general rule, no more than one attorney may charge the estate for intra-office conferences....").

FHLMC's Obj. at 9 (one citation omitted).

■ FHLMC adequately states the law in this District relating to "multiple billing" and compensation therefor. But FHLMC, to its own detriment, merely directs the Court's attention to two entries allegedly reflecting improper multiple billing. FHLMC points out meetings conducted on October 20 and November 11, 1992. The Court has reviewed the Fee Application for other instances of multiple billing and has not independently found any improper non-compensable entries. Consequently, the Court will restrict its consideration to these two entries because they are the only adequately challenged entries. "[An] [o]bjector must, at some point, identify any allegedly improper, insufficient, or excessive entries and direct the Court's attention to them. The objector should also be able to identify a reason why [such entries] ... are not reasonable ... and offer evidence supporting its position." *Hunt's*, 161 B.R. 971, at 982.

■ With respect to the specific entries challenged by FHLMC as containing multiple billing, the Court holds that the entries were justified. As FHLMC acknowledged, multiple billing is acceptable where the entries contain adequate explanation of each attorney's participation. The entry for time spent on October 20, 1992 states that three attorneys spent 2.5 hours each on an intra-office conference. The entry contains an explanation of the conference, stating that it covered problems associated with confirmation, economic factors and strategy for a reorganization plan, issues relating to cramdown, strategies and negotiation required to arrive at an agreed plan of arrangement and consideration of whether "cram-down"[7] is a viable alternative. (Exhibit C to Fee Appli-

---

7. The term "cram-down" refers to a bankruptcy court's confirmation of a plan of reorganization under chapter 11 of the Bankruptcy Code, with-

out the consent of all creditors or equity holders. 11 U.S.C. § 1129(b)(1) (1994).

cation of HTB at 55–6.) The Court finds that each attorney's role can be determined from the varying explanations set forth in the Fee Application. The entries refer to a plan of reorganization which was on file with the Court and upon which a confirmation hearing was to be held within two days of the meeting. Accordingly, the entry for October 20, 1992 does not violate the general rule against compensation for multiple billing and is allowed.

As to the entry for time spent on November 11, 1992, the Court holds similarly that the conferences held on that date covered matters for which multiple billing may be allowed. Each attorney sufficiently detailed the matter covered at the meeting and substantiated the specific purpose he or she served. In fact, the entry details time spent by one attorney (Howard Weider), who the very next day spent eight hours researching the specific legal issues discussed at the meeting.

FHLMC has not successfully shown that either entry it attacks as representing non-compensable multiply billed time should be struck.

■ **(iii)** Next, FHLMC claims that HTB's Fee Application contains numerous entries where tasks are "lumped" together, such as where an entry of eight to twelve hours may list up to ten tasks performed. As examples, FHLMC directs the Court's attention to entries dated (all occurring in 1992 and 1993 and listed in numeral form for simplicity): 6/30; 7/22; 9/17; 9/30; 10/12; 10/16; 10/20; 10/26; 11/4; 11/30; 12/1; 12/14; 12/15; 1/14; 1/18; 1/21; 2/10 and 2/11. FHLMC contends that "lumping alone justifies denial of HTB's request for fees." (FHLMC Obj. at 9 (citations omitted)).

■ The Court agrees that, as a general rule, when "services . . . have been lumped together [they] are not compensable." *In re Navis Realty, Inc.*, 126 B.R. 137, 141 (Bankr. E.D.N.Y.1991). But the Court has discretion to determine that the services are compensable where the lumping did not preclude a meaningful review of the time spent and the amount billed. *See In re Wire Cloth Products, Inc.*, 130 B.R. 798, 807 (Bankr.N.D.Ill. 1991) (citing *In re Churchfield Mgt. & Inv. Co.*, 98 B.R. 838, 861 (Bankr.N.D.Ill.1989)).

FHLMC has not demonstrated, nor even alleged, in any way, why the entries cited demonstrate improper lumping. Again, consequently, FHLMC has not carried its burden. Nevertheless, the Court finds from its own review, that even in the worst cases of lumping, when the number and type of tasks performed are considered, the time allotments are not unreasonable.[8] Indeed, the Office of the United States Trustee raised no disapproval on grounds of lumping, either, even after it received FHLMC's objection.

■ **(iv)** The final substantive criticism of the Fee Application by FHLMC derives from its allegation that a portion of the work billed at partner time could (or should) have been accomplished by associates. FHLMC alleges that HTB should not, for this reason, be compensated at the partner rate. (FHLMC Obj. at 10) (citing *Navis Realty*, 126 B.R. at 142)). FHLMC attacks HTB time spent upon its preparation of the preliminary draft of legal papers, including fee applications, and drafting cover letters. FHLMC does not cite to the specific entries where this is set forth in the Fee Application.

The underlying argument purportedly substantiating this objection is too unspecified to make possible any genuine and detailed consideration by the Court. Although FHLMC in its papers alleges over-billing, it does not substantiate its position by directing the Court to any specific entries and explaining how over-billing actually resulted. Neither the Court nor the Office of the United States Trustee found partner entries for work which could have been performed more economically by an associate. It is not the Court's responsibility, nor would it be proper, to fashion a plausible argument on behalf of a complaining party. *Hunt's*, 161 B.R. 971, at 983; *id.* at 981–81 ("Objectors have the responsibility to . . . produce evidence contro-

---

**8.** This allowance of the fees should not be read as a general tolerance of lumping, or multiply billed entries. The entity requesting a fee award

risks not presenting sufficient detail and denial of the request.

verting that produced by the applicant.... '[A] gestalt reaction . . . isn't good enough.' ") (quoting *Steinlauf v. Continental Ill. Corp (In re Continental Ill.Sec.Litig.)* 962 F.2d 566, 570 (7th Cir.1992)). The Court has perused the Fee Application, but in the vacuum created by FHLMC, we were not able to ascertain any entries setting forth associate level work performed by experienced partners.

C. Lastly, FHLMC argues that HTB's failure to obtain a successful reorganization for Debtor is further justification for reducing the Fee Application. This argument is based upon the contention that FHLMC is Debtor's only creditor and, as such, FHLMC would have to consent to or be left unimpaired by any confirmable plan. FHLMC claims that the plan filed by HTB was "patently unconformable", as were two amended plans that were filed. (FHLMC Obj. at 11). Thus, FHLMC argues, since there was no likelihood of obtaining a successful reorganization, Debtor's attorneys should not be compensated. (Obj. at 11) (citing *In re Greene*, 138 B.R. 403, 408 (Bankr.S.D.N.Y.1992)).

The Court holds that this argument is without merit. Firstly, FHLMC's contention that, as sole creditor, it would have had to accept to, or be left unimpaired by, any confirmable plan of reorganization is false. It was not until March 8, 1993, when the Township of Irvington, New Jersey ("Township") filed notice of the assignment of its claim to FHLMC, that FHLMC became the sole creditor. The Fee Application is for legal services incurred between May 13, 1992 and February 26, 1993; during this entire time, the Township as creditor could have accepted a proposed plan by Debtor, notwithstanding FHLMC's objection. It is possible that HTB could have proposed a "cram-down" plan of reorganization. 11 U.S.C. § 1129(b)(1) (1994); *see supra* note 7 (limited definition of "cram-down"). FHLMC has not addressed the existence of the Township or whether cram-down was even a viable option.

It therefore appears that the contention that confirmation of any plan was contingent upon FHLMC's approval is inaccurate and for this reason opposition to the Fee Application upon this ground must fail.

FHLMC also argues pursuant to *In re Saunders,* 124 B.R. 234, 237 (Bankr. W.D.Tex.1991), where legal fees were reduced when the case languished without any plan for over a year. FHLMC proposes HTB's award should be similarly reduced.

The Court cannot agree. The case on which FHLMC bases this argument acknowledges that "bankruptcy courts are required to draw on their experience to evaluate whether the overall amount requested is justified by the size of the case and the results obtained." *Id.* at 237. The Court in *Saunders* concluded that the fee application should be reduced where, in an average real estate reorganization, a plan was not filed within a year. Actions by Debtor's counsel in the case at bar, however, do not warrant reduction of the Fee Application on grounds such as those set forth in *Saunders.* First, the Property and Debtor's attempted reorganization are substantially more complicated than those before the court in *Saunders.* Second, HTB filed a plan within nine months of the petition date. FHLMC is grasping. The Court will not reduce the Fee Application pursuant to a readily distinguishable case.[9]

For all the reasons discussed, the Court holds that the Fee Application of HTB be, and hereby is, **GRANTED IN FULL**; satisfaction of the amount is to be made so as to be actually received by HTB on or before April 19, 1994; HTB is authorized to do such acts as are reasonable and necessary to effectuate the Court's Order herein.

**SO ORDERED.**

---

**9.** It must be again noted that the Court gave consideration to this objection, though it is not the type of substantive objection to particular amounts in the Fee Application that HTB and

FHLMC agreed would be preserved pursuant to their Cash Collateral Stipulation. Cash Collateral Stipulation, dated August 31, 1992, at 6, ¶ 14.